THE GALVESTON, HARRISBURG AND SAN ANTONIO RAILWAY
COMPANY V. CHAS. PORFERT.

No. 5821.

1. **Negligence a Fact—Charge.**—The court can not specify what acts would have been prudent on part of one about to cross a railway track, or what imprudent. The jury must be left to connect the facts in their own way, to reason for themselves, and to form their own conclusions from the evidence without the aid of the court as to whether due care appears or the want of it, which is negligence.

2. **Same.**—If the law should make certain acts or omissions negligence *ipso facto*, the court should then direct the jury that the finding of such acts or omissions would be a finding of negligence. But the court would transcend its authority if it instructed the jury that the omission of an act of prudence would amount to negligence unless the law declared it to be so.

3. **Mistake in Use of Word in Charge.**—The use of the word *defendant* when it is evident in the charge that *plaintiff* was meant, could not have misled the jury and the error is immaterial.

4. **Contributory Negligence.**—Where the testimony of the plaintiff shows that when crossing the track at right angles and when his team of two horses had crossed the track, and when seated in the wagon about the middle of the track he first saw the approaching train at a distance of three hundred and ninety feet; *held*, that his failure to leave the track before the approach of the train was so manifestly a want of care as to require a verdict for damages for plaintiff to be set aside.

5. **Double Damages.**—The verdict found "for peril and fright" $833; "mental anguish" $1666; "pain and suffering" $6667. *Held*, that the items for *peril and fright* and for *mental anguish* were included in pain and suffering, and in the judgment upon the verdict they should not have been included.

APPEAL from Bexar.    Tried below before Hon. Geo. H. Noonan.
The opinion gives the facts.

*Waelder & Upson*, for appellant.—Care required of one crossing a railway track. H. & T. C R R Co. v. Smith, 52 Texas, 183–4; Fletcher v. Atlantic & Pacific R. R. Co., 64 Mo., 484 (17 Amer. Ry. Rep., 306); Fleming v. U. P. R. R. Co., 49 Cal., 257; Union Pacific Ry. Co. v. Adams, S. C. Kansas, April 15, 1885, 6 Pacific Rep., 531–2; Reading & Columbia R. R. Co. v Ritchie, 102 Penn. St. 425; 19 Amer. and Eng. R. R.

Cases, 274; Shearm. & Redf. on Negl., sec. 11; 2 Thomps. on Negl., p. 1236, sec. 11; Brown v. Mil. & St. Paul R. R. Co., 19 Am. Ry. Rep., 300 *et seq.;* C. H. & I. R. R. v. Butler, 2 Northeastern Rep., 140; R. R. Co. v. Houston, 5 Otto, 702; 1 Thomps. on Negl., 403–6 and 426; Cont. Impt. Co. v. Stead, 95 U. S., 163.

As to what may be considered in estimating damages. H. & T. C. R. R. Co. v. Boehm, 57 Texas, 153.

Damages for injury to the feelings only recoverable when there is gross or willful negligence. G. C. & S. F. R. R. Co. v. Levy, 59 Texas 563; G. C. & S. F. R. R. Co. v. Greenlee, 62 Texas, 351.

As to excessiveness of damages. I. & G. N. R. R. Co. v. Underwood, 64 Texas, 463–469; H. & T. C. Ry. Co. v. Willie, 53 Texas, 328; H. & T. C. Ry. Co. v. Boehm, 57 Texas, 155; G. C. & S. F. R. R. Co. v. Greenlee, 62 Texas, 351; Ill. C. R. R. Co. v. Welch, 52 Ill., 183; 4 Am. Rep., 596; Kansas Pac. R. R. Co. v. Peavy, 11 Amer. and Eng. R. R. Cases, 269; Chicago & N. W. Ry. Co. v. Jackson, 55 Ill., 492; 8 Am. Rep., 664; Mo. Pac. R. R. Co. v. Mackey, S. C. Kansas, March 7, 1885, 22 Amer. & Eng. R. R. Cases, part 2, 314.

*John H. Copeland* and *J. H. McLeary,* for appellee. — 1. The court can not declare as matter of law that the omission of any act is negligence unless that act is prescribed by some law, and the question of whether certain acts or omissions constitute contributory negligence must be left to the jury. I. & G. N. R. R. Co. v. Ormond, 64 Texas, 489; T. & P. R. R. Co. v. Wright, 62 Texas, 517, 518; H. & T. C. R. R. Co. v. Richards, 59 Texas, 376; T. & P. Ry. Co. v. Murphy, 46 Texas, 366; I. & G. N. R. R. Co. v. Graves, 59 Texas, 333; T. & P. R. R. Co. v. Chapman, 57 Texas, 82; I. & G. N. R. R. Co. v. Miller, 51 Texas, 275, 276; L. R. & F. S. R. R. Co. v. Barker, 19 Am. and Eng. R. R. Cases, 199; Field on Dam., sec. 188, and authorities cited in notes 44 and 45.

2. The law does not require a traveler to stop, but only to look and listen before attempting to cross the railroad track. H. & T. C. Ry. Co. v. Wilson, 60 Texas, 142–45; Strong v. C. P. R. R. Co., 8 Am. and Eng. R. R. Cases, 274–76; S. C., 61 Cal., 327–29; Davis et al. v. N. Y. & H. R. R. R. Co., 47 N. Y., 402, 403; Duffy v. C. & N. W. R. R. Co., 32 Wis., 274, 275; Richardson v. N. Y. Cent. R. R. Co., 45 N. Y. 848; Ernst v. H. R. R. R. Co., 35 N. Y., 30, 36, 37 *et seq.;* McKay v. N. Y. Cent. R. R. Co., 35 N. Y., 78 *et seq.;* Beisegel v. N. Y. Cent. R. R. Co., 34 N. Y., 624; Kelly v. St. Paul M. & M. R. R. Co., 29 Minn., 1; Dimick v. C. & N. W. R. R. Co., 80 Ill., 338; Wood's Field on Corp., p. 790, sec. 510, and notes 4 and 5.

3. The court is not required to correct or modify an incorrect instruction asked by either party, but may simply refuse it, as was done in this case. Rosenthall, Meyer & Co. v. Middlebrook, 63 Texas, 339; Patton

v. Gregory, 21 Texas, 513; McCown v. Schrimpf, 21 Texas, 22; Gray v. Burk, 19 Texas, 228; Ratcliff v. Baird, 14 Texas, 43; Wells v. Barnett, 7 Texas, 584; Hardy v. De Leon, 5 Texas, 211.

4.   The verdict of the jury follows plaintiff's pleadings in itemizing the damages, and is in accordance with the law prescribing the elements of damages in cases of personal injury.   H. & G. N. R. R. Co. v. Randall, 50 Texas, 254; H. & T. C. Ry. Co. v. Boehm, 57 Texas, 153; T. & P. R. R. Co. v. Woodall, 2 Ct. App. Civil Cases, sec. 470, pp. 421–2; Field on Dam., secs. 600, 615, 74; 3 Sutherland on Dam., 257; Wood's Field on Corp., p. 468, sec. 322, p. 478, sec. 322; H. & T. C. Ry. Co. v. Corbett, 49 Texas, 581; H. & T. C. Ry. Co. v. Marcelles, 59 Texas, 337; I. & G. N. R. R. Co. v. Dawson, 62 Texas, 261.

5.   The verdict of the jury is not excessive in amount.   T. & P. Ry. Co. v. Kirk, 62 Texas, 233; H. & G. N. R. R. Co. v. Randall, 50 Texas, 261; City of Galveston v. Posnainsky, 62 Texas, 135; T. & P. R. R. Co. v. Garcia, 62 Texas, 293; T. & P. R. R. Co. v. O'Donnell, 58 Texas, 44; I. & G. N. R. R. Co. v. Brett, 61 Texas, 488; T. & P. Ry. Co. v. McAtee, 61 Texas, 698; Brooke v. Clarke, 57 Texas, 113; H. & T. C. Ry. Co. v. Pinto, 60 Texas, 516; H. & T. C. Ry. Co. v. Boehm, 57 Texas, 155; Galveston Oil Co. v. Malin, 60 Texas, 651; H. & T. C. Ry. Co. v. Simpson, 60 Texas, 107; G. C. & S. F. Ry. Co. v. Dorsey, 66 Texas, 148; T. & P. R. R. Co. v. Woodall, 2 C. A. Civil Cases, sec. 478, p. 422; Filer v. N. Y. C. Ry. Co., 49 N. Y., 42; Walker v. Erie Ry. Co., 63 Barb., N. Y., 260; Frank v. N. O. R. R. Co., 2 La. Ann., 25.

COLLARD, JUDGE. — Appellee Charles Porfert brought this suit on the 23d day of August, 1883, against the appellant, the Galveston, Harrisburg & San Antonio Railway Company, for damages alleged to have been caused by the negligence of defendant's servants in managing and propelling its engine and cars, by which negligence he was knocked off of his wagon while attempting to cross the railroad track and injured, " causing a compound fracture of the left leg below the knee, wounding him severely in many places, injuring him internally, and bruising him all over from head to foot."   The damages are specified and itemized as follows:   " The company by the carelessness and negligence of its servants and agents, and by the collision aforesaid, and by the wounds, bruises, and injuries aforesaid to plaintiff done, have caused him great pain and suffering and have damaged him for life, transforming him from a hearty and robust young man to a cripple for life, to his great and irreparable damage as follows, to-wit:   To loss of time from July 23 to the filing of the amended petition (March 4, 1885), $2500; to peril and fright at the time said injuries were sustained, $2500; to mental anguish suffered by plaintiff in consequence of said injuries, $5000; to pain and suffering consequent on said personal injuries, $20,000; to impaired capacity for

labor in consequence of weakness and permanent injuries as aforesaid, $20,000."

Plaintiff also alleges that he "observed the sign 'railroad crossing;' that, before attempting to cross he looked and listened both to the right and left and neither saw nor heard anything to indicate the approach of a train," and after taking these precautions he attemped to cross, when he was hurt as previously stated; that he was thirty-two years old at the time of the accident; that by reason of the injuries aforesaid he was confined to his bed six months; that he can not be restored to a healthy and robust condition, but must henceforth be a sickly cripple and a miserable invalid; that the defendant's engine was running at a great speed, forty miles per hour; that no bell was being rung or whistle blown at the time and distance required by law on the locomotive before crossing the public highway; and that all other usual and necessary precautions were disregarded, and that he was guilty of no contributory negligence whatever.

Defendant pleaded not guilty, contributory negligence on the part of plaintiff by attempting to cross the railroad on a narrow and obscure lane not exceeding twelve feet in width without using his senses of sight or hearing, giving no heed to the whistle which was duly given by the engineer at the proper time and place; and that if plaintiff has not long since recovered from the alleged injuries it has been through his own fault and imprudence, among other things by voluntarily contracting a loathsome disease.

It is also alleged that defendant after the injuries for the space of about one year had plaintiff fed, nursed, and cared for in the best manner, and supplied with comforts, medicines, and medical attention, at its own expense, in the sum of $1000, which is pleaded in setoff.

As nearly as can be stated the accident occurred as follows: About 4 o'clock in the afternoon of July 23, 1883, Charles Porfert, aged — years, was driving a two horse wagon on the Nelson road, a public road near the Medina River, intending to go to San Antonio. The dirt road approached the defendant's railroad from the south and crossed the railroad about two hundred and twenty yards west of the bridge on the river. The railroad here runs nearly east and the dirt road nearly north. The wagon road on the south side runs through a lane about twenty-two feet in width. At the time plaintiff was driving along the road toward the crossing there was a brush fence on the left side of the lane, green corn growing in the field, a few trees along near the line of the fence, sunflowers and bloodweeds growing in the right of way. There was a cut for the railroad through rising ground from the bridge toward the crossing from three to four feet deep and the waste dirt was piled or banked up in the usual way, and on these embankments and in the right of way sunflowers and bloodweeds were growing thick and several feet high. This cut did not extend from the bridge to the crossing, but was between.

the two.   At the crossing the track of the railroad was a little above the natural ground, eight or ten inches, so that the pull for a wagon to the top of the track was slightly upward.   The evidence is conflicting, but it was amply sufficient to justify the jury in finding that as plaintiff approached the railroad crossing along the lane he could not see an approaching train until he got close to the track, within a few feet of it. At the track and on it the road being straight could be seen for over a mile each way.   Plaintiff had worked on this road and was familiar with the locality; he knew the train signals, whistles, and bells.   There was a whistling post at the proper distance from the crossing and a sign at the crossing for travelers designating it as a railroad crossing.

The wind was from the south or southeast.   Just before plaintiff reached the crossing, about eighteen feet from it, he stopped to have one Baden move his wagon out of the way.   Baden was loading wood on his wagon from the brush fence, and his son was assisting; his son moved the wagon so that plaintiff could pass.   A few words were exchanged and plaintiff drove on.   While stopped at this point plaintiff listened but heard no train.   He drove the horses up to the track, looked and listened again he says, and saw and heard nothing.   When the wagon was on the track he looked and coming from the west was a train about thirteen rail lengths away—three hundred and ninety feet.   It was a construction train, locomotive and two flat cars.   He says it was running very fast, that he raised his stick and was in the act of striking his horses, then moving and off the track, when the locomotive struck his wagon on the rear end, tearing the wagon to pieces and causing the injuries to him as set out in the petition.   The train passed on and stopped several hundred yards east near the section house and returned to him.   He was found unconscious about fifteen steps from the cattle guard in Baden's field.

Baden says he heard no whistle or other signal until the train was crossing the lane; he then looked and saw only the plaintiff's horses standing on the opposite side of the track, the wagon gone.   The engineer and fireman on the train say the regular signals for crossing were given at the proper time; and the engineer says plaintiff when he saw him first had his head down looking east; that he gave alarms at once, reversed his engine, called for brakes, and did all in his power to avoid the collision.   Plaintiff says he was driving slowly to avoid overturning a can of butter he was taking to San Antonio.

Defendant produced a number of witnesses who testified that an engine and train could now be seen from nearly every point on the lane all the way from the crossing to the bridge.   The roadbed had been raised about ten inches after the accident before these witnesses took observations, some trees had been cut away, the brush fence had in part been removed, the corn and weeds were not in the way to any extent, being young and smaller.

The employes testified that the train causing the accident was moving at a rate not exceeding eighteen miles an hour when plaintiff was first seen by them. The engineer bore a good reputation for competency and stood well with his company. The cause was submitted to a jury April 7, 1885. Their verdict was as follows:

"We the jury find for plaintiff and assess the damages as follows: Loss of time, $833; peril and fright, $833; mental anguish, $1666; pain and suffering, $6667; impaired capacity, $6667; total, $16,666."

Judgment was rendered accordingly and defendant appealed and assigned errors.

The first assignment of error is as follows: "The court erred in refusing to give to the jury the two charges asked by defendant, which two special charges are marked refused, for the reason that the first thereof should have been given in view of the testimony of the plaintiff himself that he could have heard the approaching train or locomotive if he had stopped his wagon, the noise of which prevented his hearing."

The charges asked and refused were but one consecutive charge, and were as follows: "In this connection you are instructed that if a person riding in or upon a wagon could not hear the approach of a train or locomotive by reason of the noise made by his wagon, and if by stopping his wagon he could have heard the approach of danger, then it would be an act of prudence and necessary precaution to stop the wagon to enable him to listen for an approaching train or locomotive on the railroad track, and failing to do so he would contribute to his own injury and thus be guilty of what is called 'contributory negligence,' for which no one but himself would be at fault or responsible."

This is the first part of the charge refused on which the foregoing assignment of error is based. The following is the latter part of it, for the refusal of which the second assignment of error is taken:

"If therefore the jury believe from the evidence in this case that the plaintiff failed in the exercise of ordinary and reasonable care and caution in approaching and going upon the railroad track, and that the want of such care and caution on his part contributed to the injury which he has sustained, and that by the exercise of such care and caution he could have avoided the accident by which he was injured, then the defendant is not liable although the railroad company may not have given the signals which the law requires, and in that event your verdict should be for the defendant."

The assignment of error relating to this part of the requested charge is as follows: "The court erred in refusing to give to the jury the other of said two charges for the reason that the evidence generally and the plaintiff's own testimony shows that the plaintiff failed in the exercise of ordinary and reasonable care and caution in approaching and going

upon the railroad track, and that the want of such care and caution on his part contributed to the injury which he sustained."

The general charge of the court upon this subject was as follows:

"Third. If you believe from the evidence that the plaintiff was injured as stated by him in his petition by the railroad train of defendant, and that prior to said collision plaintiff used all necessary precautions to ascertain if a train was in the vicinity of the wagon road crossing, and that in fact plaintiff is guilty of no contributory negligence and that the injury complained of was caused by the negligence of the defendant's employes in operating the railroad train of the defendant, you will find for the plaintiff a verdict for such damages as the proof shows he has sustained."

"Fifth. If, however, you believe from the evidence that the plaintiff failed in the exercise of ordinary and reasonable care and caution in approaching and going upon the railroad track, and that the want of such care and caution on his part contributed to his injury, and that by the exercise of such care and caution he could have avoided the accident by which he was injured, then the defendant can not recover in this suit, and your verdict will be for the defendant."

In addition to the foregoing the court gave the following charge at request of defendant:

"The statute law of this State provides that 'a bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive engine, and the bell shall be rung or the whistle blown at the distance of at least eighty rods from the place where the railroad shall cross any road or street, and to be kept ringing or blowing until it shall have crossed such road or street, or stopped;' and neglecting to do so shall be 'liable for all damages sustained by any person by reason of such neglect.'

"While this is a duty imposed upon railroad companies the performance of which the traveler may expect, yet all persons wishing to cross a railroad track at the crossing of a road are also charged with the reciprocal duty of exercising reasonable care, prudence, and caution in avoiding danger in approaching or crossing the track, and the jury are therefore further instructed that—

"A person in attempting to cross a railway track at a crossing must use due care to avoid danger, and if he does not do so and his own negligence is the proximate cause of the injury he can not recover damages for any injury received by him, although the railway company may not have given the signals which the law requires to indicate the approach of a train or locomotive; in such case he contributes to his own injury and it is not the result of the omission of the act required by the law. It is not only the duty of one in approaching a railway crossing to look along the line of the road and see if a train is coming, but if he fail to do so, or to listen, or to use any other reasonable means of informing himself

of approaching danger, such conduct on his part when it appears from the evidence would amount to negligence."

We do not think the court erred in refusing the requested charge. It has been often decided that negligence or not is a question of fact for the jury. In the first part of the charge requested and refused the court was asked to instruct the jury that if plaintiff could have heard the approaching train by stopping his wagon to listen, then his failure to do so was contributory negligence. The court cannot specify in its charge what acts would have been prudent or what imprudent, what precautions would have avoided the collision or what would amount to negligence. The jury must be left to connect the facts in their own way, to reason for themselves and form their own conclusions from the evidence without the aid of the court. The court can not point out to them a method by which they can reach a conclusion from the evidence, or suggest to them an argument arising upon the facts by which they can or must solve an issue of fact. It is the duty of the court to furnish the jury with the rules of law applicable to facts as they may find them, and no more. If the law should make certain acts or omissions negligence *ipso facto,* the court should then direct the jury that the finding of such acts or omissions would be a finding of negligence, but the court would transcend its authority if it instructed the jury that the omission of an act of prudence would amount to negligence unless the law declared it to be so. The court might as well argue one feature of the case as another, and in this way argue the whole case for the jury upon the facts. The jury must be left to argue the facts for themselves without suggestion or intimation from the court. T. & P. R. R. Co. v. Wright, 62 Texas, 517 and 518; T. & P. R. R. Co. v. Chapman, 57 Texas, 82.

The error assigned for refusal to give the latter part of the charge is not well taken. The first part of the charge asked was not the law and for that reason the last part of it could not be given. The court is not required to separate a charge into fragments, giving such portions as are the law to the jury and refusing such as are not the law. Besides this the court in the section of its charge above quoted (as the fifth section) had substantially given the latter part of the charge asked. The use of the word "defendant" when it is evident "plaintiff" was meant could not in the connection in which it was used have misled the jury. In addition to this the special charge asked by defendant and given by the court was as favorable to defendant as the law would warrant upon the subject of contributory negligence. It not only stated that it was plaintiff's duty on approaching the railroad crossing to use his senses to look and listen for trains, but proceeded to declare that his failure to do so would amount to negligence. The charge given by the court of its own motion and the special charge given at the instance of the defendant

submitted the question of contributory negligence as favorably to defendant as it could have been.

Appellant complains because the jury failed to find contributory negligence on the part of plaintiff in approaching and crossing the railroad track. It will be observed that if the plaintiff can recover at all he must do so upon his own evidence as to how the accident occurred. After stating that he stopped just before reaching the track and exchanged a few words with Baden, he proceeds to say:

"While standing in the lane I listened and could see no train or anything. To the east the railroad curved; beyond the curve could see no track on account of corn and two large wood piles. Then I turned my head towards the river and could see nothing that way on account of the brush fence, the hackberry tree, the bluff, a pecan tree, one limb hanging down on the bridge; don't think it is there now. I stopped and listened; could not hear anything. I drove on slowly on account of butter in a can. I went up to the iron track, kind of a high place, where horses generally give a pull up, and sometimes don't go very fast. About the time the horses struck the track I could not see anything to the west of me. I looked east and could not see anything there. About that time I got on the track; just as my body got on the track I saw a train; had been looking east, watching the curve; the train was right on me, within thirteen rail lengths. It had not whistled then. The wind was blowing pretty strong at the time. I did not hear the bell nor whistle. After I got on the track and saw the train, the horses were off the track—north of it. My body was in the center of the track when I saw the train. I raised my stick and struck the horse with my left hand. As I struck the horse the train struck me. The train got within thirteen rail lengths of me when they happened to see me and commenced whistling, and signaled for brakes."

Again on cross-examination he was asked: "Where did you say you were when you first saw the train?"

He answered: "On the track."

"Whereabouts?"

"Right in the centre of the track."

"And your horses were off the track?"

"Off the track," he answered.

"Where did you first see that train?"

"About thirteen rail lengths from me, this side of the tank."

"Your horses were going?"

"They were going, yes."

It was in proof that a rail length was thirty feet.

If the testimony of plaintiff is true it is impossible that he could not have driven off the track after he saw the train before it struck him if he had exercised the care he was bound to use under the circumstances.

His horses were moving and already across the track; his seat in the wagon was in the middle of the track when he saw the train three hundred and ninety feet away coming, plaintiff says, at the rate of forty miles an hour. Under such circumstances he must have been guilty of contributory negligence in failing to cross the road before the train struck him. This conclusion is so free from doubt that we do not hesitate to say the verdict was contrary to the evidence, and it was error in the court below to refuse a new, trial on that ground.

The verdict assessed damages for "peril and fright" $833, "mental anguish" $1666, "pain and suffering" $6667. The petition claimed damages for "peril and fright at the time said injuries were sustained, mental anguish suffered in consequence of said injuries;" thus dividing the mental suffering into two periods. It might as well have been divided into as many days as the suffering continued. The suffering of mind was the result of one act, and though the injury was continuing it was but one injury. The petition also divided the damages into "pain and suffering consequent on said personal injuries," to which the jury responded as before stated. This pain and suffering is not by the petition denominated *physical* pain and suffering so as to distinguish it from the fright and mental anguish before set up as items of damage. We think the petition asked for and the verdict awarded a double recovery. The $6667 awarded for pain and suffering consequent upon the personal injuries included the two items for fright and mental anguish already allowed. The findings for the two previous items, $833 and $1666, should both be stricken out, reducing the verdict to $14,167. The amount of the verdict in so far as it is double could be here remitted and judgment could be rendered for the $14,167 if the verdict could be sustained at all. It can not however be sustained at all on account of reasons before given.

Appellant claims that the verdict is excessive. We are not prepared to say that an appellate court should so hold. Plaintiff's injuries were very severe; he suffered in the hospital one hundred and forty-five days; dead bone was at the time of the trial (twenty-one months after the accident) still working out of the wound; the wound was still open; his leg was partially stiffened and somewhat shorter than the other leg, and he was disabled for life; his leg had been broken, large pieces of skin were torn from the flesh, and he was bruised in many places. The verdict was large but not so clearly excessive as to require us to set it aside after it has been approved by the trial judge. R. R. v. Dorsey, 66 Texas, 148; R. R. v. Garcia, 62 Texas, 285; R. R. v. Dawson, 62 Texas, 261; R. R. v. Brett, 61 Texas, 483; R. R. v. Randall, 50 Texas, 254; R. R. v. Casey, 52 Texas, 124; City of Galveston v. Posnainsky, 62 Texas, 120; R. R. v. Ormond, 64 Texas, 490; R. R. v. Kirk, 62 Texas, 233.

Because of the refusal of the court below to grant a new trial on the ground that the jury should have found that plaintiff was guilty of con-

tributory negligence we conclude the cause ought to be reversed and re-manded for a new trial.

We have omitted to state in the proper place our conclusion upon appellee's motion to strike out the statement of facts submitted with the case. The stenographer's report of the testimony was in part adopted by the parties and the court as a correct statement of the facts. In many instances the questions propounded to witnesses and their answers are given in full. This was done to give the Supreme Court a better appreciation of the testimony. In so far as the questions to and answers of the plaintiff are given we can not say that they were unnecessary. We do not think the statement of facts in the particulars mentioned in the motion is so violative of the rules as to require us to sustain the motion. We think it ought to be overruled.

*Reversed and remanded.*

Adopted December 21, 1888.