### Texas Mexican Railway Company v. Malcom G. Douglas.

#### No. 2619.

1. **Irrelevant but Immaterial Testimony.**—The plaintiff in a suit for damages for personal injuries suffered through the negligence of a railway company for which he was working was permitted to testify that his superior at time of the injury was subsequently killed on the railroad of defendant; another witness who was called for defendant testified to the same fact. *Held*, that the testimony of the plaintiff complained of was not to the effect that *the boss* had been negligently killed, for which reason and that the manner of the death was proved by a witness for defendant the testimony was immaterial and no cause for reversal.

2. **Mental Injury.**—It is competent as a ground for relief to prove that the injury affected the mind of the plaintiff.

3. **Habits of Industry and Sobriety.**—So also it is competent for the plaintiff in suing for damages for personal injury to prove his habits of sobriety or of industry.

4. **Charge—Entire Charge Upon Same Subject Taken Together.**—See a charge the several paragraphs of which taken together fairly submit as a question of fact for the jury whether the plaintiff from his inexperience in the work engaged in realized the danger to which he was exposed when injured.

5. **Duty of Employe to Employer.**—The defendant employer asked the instruction: "The degree of care required of defendant in furnishing safe implements and appliances for its workmen is that of *ordinary* care. The company is required to use only those in ordinary use in and about its workshops and yards. And unless the jury

are satisfied from a preponderance of evidence that there are other and more suitable and safe implements in use by railroads as fenders between engines or cars being moved about their yards or workshops than that of the character of the fender used in this case the plaintiff can not recover." The court had already charged that "it was the duty of defendant to use due care in the protection of its employes, and that they on the other hand assumed the ordinary risks incident to their employment." *Held,* that the instruction asked was misleading and it ignored the duty of the employer to warn the inexperienced of danger in the work, wherefore the court below properly refused it.

6. **Repeating a Charge.**—It is proper practice for the trial judge to refuse instructions asked which only embody in different language the charge given upon the subject.

7. **Verdict Not Excessive.**—See facts where a verdict for $12,000 for actual damages for personal injuries was sustained.

APPEAL from Aransas. Tried below before Hon. H. Clay Pleasants.

This is the third appeal in this case. 63 Texas, 564, and 69 Texas, 694.

The opinion fully sets out such parts of the record as are passed upon by the court.

*Stanley Welch, Delmas Givens,* and *Thomas W. Dodd,* for appellant.

1. When a verdict is rendered in a case in which each party has established his case by evidence, and the verdict if the case were properly tried could not under established rules be disturbed, no matter for which party it is rendered, the necessity for guarding against illegal testimony is manifest. Then the slightest illegal testimony which might possibly have influenced the verdict will be fatal, and afford cause for a reversal of the judgment. Ross v. Kornrumpf, 64 Texas, 390; G. C. & S. F. Ry. Co. v. Levy, 59 Texas, 551; Jackson v. Deslonde, 1 Posey's U. C., 674; Eborn v. Zimpelman, 47 Texas, 504; Bovee v. Danville, 53 Vt., 190.

2. A charge of the court which in terms assumes the existence of a controverted fact as the predicate for law announced by the charge, is erroneous. The part complained of is, " the plaintiff himself being inexperienced in the work in which he was engaged, and by reason thereof was ignorant of the danger to which he was being exposed by said agent." Rev. Stats., art. 1317; H. & T. C. R. R. Co. v. Nixon, 52 Texas, 28; G. C. & S. F. Ry. Co. v. Greenlee, 62 Texas, 348; Andrews v. Marshall, 26 Texas, 215; Altgelt v. Brister, 57 Texas, 436; Boaz & Co. v. Schneider & Davis, 69 Texas, 128; Lee v. Yandell, 69 Texas, 37.

3. The court should have given the charge as to the degree of care owed by the defendant to the employes. Rev. Stats., art. 1319.

The charge of the court should always be framed so as to present to the jury the issues made by the pleadings, if there is evidence under them, unless an issue be abandoned, concerning which abandonment the jury should be instructed. I. &. G. N. Ry. Co. v. Underwood, 64 Texas, 463.

"The test of diligence adopted by the Supreme Court requiring of railroad companies proper cars, machinery, etc., is that of ordinary care." H. & T. C. R. R. Co. v. Oram, 49 Texas, 345; Mo. Pac. R. R. Co. v. Lyde, 57 Texas, 509; Pierce on Railroads, sec. 370; 3 Wood's Ry. Law, p. 1455 and notes; Id., p. 1467; G. H. & S. A. Ry. Co. v. Delahunty, 53 Texas, 212.

The master is not bound to have the instrumentalities of his business absolutely safe, but he is bound to have them as safe as ordinary care on his part can provide. 3 Wood's Ry. Law, p. 1486, note, and authorities cited.

4. The court erred in refusing the special charge asked by the defendant instructing the jury that they must be satisfied from a preponderance of evidence that the implement or appliance furnished to the plaintiff as a fender to work with, and through which his injury occurred, was not a suitable and proper implement, and that plaintiff did not know the same was unsafe and unsuitable, and by reasonable care, observation, and inspection said plaintiff could not have known that it was unsafe and unsuitable.

"To entitle the plaintiff to recover he must have used ordinary care to have prevented the injury, that is that degree of watchfulness and precaution which persons of ordinary care and prudence would naturally and reasonably use under similar circumstances of danger." H. & T. C. R. R. Co. v. Smith, 52 Texas, 187; G. H. & S. A. Ry. Co. v. Delahunty, 53 Texas, 206; I. & G. N. Ry. Co. v. Hester, 64 Texas, 401.

"Incapacity to understand the nature and extent of the business he engages to perform is not chargeable to the fault of the company." Watson v. H. & T. C. Ry. Co., 58 Texas, 439.

"In accepting the employment appellee not only assumed the risks ordinarily incident to the particular service, but he also assumed that he had the capacity to understand the nature and extent of the service and the requisite ability to perform it." Analagous case in facts, Norfolk & W. R. Co. v. Ernest, 3 S. E. Rep., 145.

5. The verdict is excessive. H. & T. C. Ry. Co. v. Schmidt, 61 Texas, 282; G. C. & S. F. Ry. Co. v. Dorsey, 6 Law Rev., 237.

*Willie, Mott & Ballinger* and *F. E. Macmanus*, for appellee.—1. The court did not err in admitting the evidence as to Carlin's death, the objection being to the entire question, and not merely to that portion of the latter in which the manner of his death was stated. T. M. Ry. Co. v. Douglass, 69 Texas, 694; Titus v. Johnson, 50 Texas, 224.

2. Injuries to the mind were a proper subject of damages in this case. T. M. Ry. Co. v. Douglass, 69 Texas, 694; Stuart v. Tel. Co., 66 Texas, 580; G. C. & S. F. Ry. Co. v. Greenlee, 62 Texas, 344; Railway Co. v. Boehm, 57 Texas, 152; G. C. & S. F. Ry. Co. v. Levy, 59 Texas, 542, 563.

3.   The testimony to habits, etc., was admissible as tending to show the pecuniary loss to which the appellee was subjected by reason of his injuries.   H. & T. C. Ry. Co. v. Cowser, 57 Texas, 293.

4.   The charge did not assume that appellee was inexperienced, and if it did this fact was proved and there was no conflict of evidence on the question. Railway Co. v. Rushing, 69 Texas, 306, 318; Teal v. Terrell, 58 Texas, 257, 261; Eason v. Eason, 61 Texas, 225, 226; Hedgepeth v. Robertson, 18 Texas, 858.

5.   The court correctly refused the charge made the subject of the sixth assignment, the question being not so much as to the suitableness of the implement to the use to which it was put, but as to whether it was prudent to prevent the engines from colliding by the use of the implement in question, and whether the implement was used in this instance in a proper manner.

The charge was correctly refused because it had been substantially embodied in the general charge of the court.

The charge includes propositions which are not law when applied to the facts of this case, and would have misled the jury as to the important question at issue.   Mo. Pac. Ry. Co. v. Watts, 64 Texas, 568; Douglas v. Ry. Co., 63 Texas, 564; Railway v. Douglass, 69 Texas, 694.

6.   As to the amount of damages, this court has always been chary of disturbing the judgment of a jury upon this matter.   It says that the amount must be so disproportionate to the injury as to show a wrong motive on the part of the jury.   Railway Co. v. Greenlee, 62 Texas, 344; Garcia v. Texas Pac. Ry. Co., Ib., 285; I. & G. N. R. R. Co. v. Brett, 61 Texas, 483.

Hobby, Judge.—This is an appeal from a judgment recovered by the appellee against the appellant in the sum of $12,000 for compensatory damages, resulting from personal injuries received by the former while in the employment of appellant.

The circumstances under which the appellee was injured were as follows:   He was a plumber by trade, and was employed by appellant to work in the line of his trade, and when not so engaged he was to make himself generally useful about the shops of the company.   He was under the direction and control of the master mechanic of the appellant, Sutcliffe.   On the 1st day of December, 1881, he was ordered by Sutcliffe to assist in getting locomotive No. 24 into the round house, which was to be accomplished by engine No. 2 drawing it by means of a chain attached to 24 for that purpose.   After placing No. 24 on false tracks No. 2 was backed up to within a few feet of 24 and connected with the latter by the chain.   Sutcliffe then directed appellee to get a block and get on No. 2 and "block her."   Appellee got on the rear of No. 2, and a fellow workman, one Carlin, handed him a piece of a railroad tie for that purpose,

about four feet long and three or four inches in width. This appellee placed, one end of, on the chain in front of the draw head of No. 2 and between the two engines, and asked Sutcliffe "If that would do?" Sutcliffe looked at it and replied, "Yes, that will do," and got on the end of the tender on the other side from appellee and signaled with his hand to the engineer of No. 2 to "go ahead" (appellee holding the piece of timber in the vertical position described with his right hand and holding on to the top of the tender with his left hand). No. 2 went ahead, drawing in the manner mentioned No. 24. Some one called out "Stop her," and Sutcliffe also signaled to "Stop her," and at the same time directed appellee to "block her," which order he obeyed. No. 2 stopped, but No. 24 not having recovered from the momentum received continued to advance, and its "deck plate being several inches higher than the draw head of No. 2 struck the piece of timber held by appellee above the draw head, forcing the timber against his thigh and crushing it by forcing him against the tender."

The difference between the height of the deck plate of No. 24 and the draw head of No. 2 was not visible to appellee from the point where he was standing. Appellee "did not know the danger," he testified, "and was inexperienced in that class of work." The timber used by him was dangerous, because placed between engines at a place where one was higher than the other. He did not refuse to obey the order because he did not know the danger, and he was ordered by the master mechanic to do it.

The errors assigned relate to the admission of evidence, the charges given, and those refused, and to an excessive verdict.

It appears that the appellee in testifying had stated that Wm. Carlin, the shop foreman, had pointed out Sutcliffe to him as the new master mechanic, and that Carlin was also assisting in and about the particular work out of which the injuries to appellee grew; that he had handed the latter the piece of timber to block the engine with, and had also stated that Carlin was dead. He was then asked: "When, where, and how he died?" . To which the appellant's counsel objected because it was improper and irrelevant. The witness was permitted to answer that "Carlin was killed about four months after my injury on the railroad of the defendant company." This is assigned as error, and it is argued that "it was intended to show other accidents or negligence on the part of the defendant," and that the legitimate scope of inquiry was attained when his death was proven without objection. The objection then would seem to be that the *manner* of Carlin's death was shown by this testimony.

But an examination of the answer of the witness does not support this objection. The answer does not preclude the conclusion that Carlin's death may have resulted from many causes having no connection with or relation to the acts of the appellant, nor does it necessarily imply that

the negligence of the company was in the remotest degree instrumental in causing his death.

It is disclosed by the testimony of a witness for the appellant, one Windisch, who testified by deposition, that " Carlin was killed by the overturning of an engine of the company this side of Banquette Station some time about the beginning of the month of April, 1882."

Without this evidence of the defendant's witness it is not absolutely certain from the answer objected to whether Carlin's death or the plaint-iff's injury is referred to as occurring " on the railroad of defendant."

The answer is not obnoxious to the objection made to it.

The evidence as to the effect of the injury upon appellee's mind re-sulting from the physical injuries inflicted upon him is objected to upon the ground that it is " too remote and speculative as an element of dam-age." It is the well settled law in this class of cases in this State that mental pain or distress, which results from physical injuries unlawfully inflicted, in violation of a right based upon contract or secured by the general law, enters into the estimate as a factor calling for compensa-tion. And the right is not restricted to cases authorizing ordinarily the assessment of exemplary damages. Stuart v. W. U. T. Co., 66 Texas, 580. It was expressly held in this case, upon a former appeal, that " mental suffering naturally resulting from the injury, whether such suf-fering be apprehension and anxiety, resulting from its depressing effects. or alarming character, was an element of damage." 69 Texas, 697.

There was no error, we think, in the admission of the evidence to the effect that " plaintiff's habits were those of a man of sobriety and indus-try." The question and answer with reference to this point objected to was as follows: " What before your injury were your habits as to sobri-ety and industry?" "I was a man that could take a glass or leave it alone. I was a sober man. I was not lazy, and I could always get work, and was industrious and anxious to get work. I never spent much time out of employment. Was rated a first-class plumber, and was repeatedly foreman."

In cases where the death of the injured party is the basis of the suit for damages it is held that the health, habits of industry, sobriety and economy, his skill and capacity for business, are all legitimate matters of inquiry (H. & T. C. R. R. Co. v. Cowser, 57 Texas, 304; Thomp. on Neg., 1290; Pierce on Railroads, 396), and we can see no reason why they would not be, in a case like the present, to enable the jury to determine the pecuniary loss, if any, sustained by injuries not resulting in death.

It is claimed that the second paragraph of the charge of the court as-sumed as a fact (thereby misleading the jury and to the prejudice of the defendant) that " plaintiff was inexperienced in the work in which he

was engaged and by reason thereof was ignorant of the danger to which he was being exposed by the said agent."

The charge complained of without the context is as follows: "2. From the foregoing the jury will see that to authorize a verdict for plaintiff the evidence must show, first, that plaintiff was injured while in the employment of defendant; second, that the injury was the immediate result of the negligence of Sutcliffe in permitting plaintiff to use an improper implement in executing his order, the plaintiff being ignorant that said implement was an improper one, or that the injury was the immediate result of the negligence of said agent in directing plaintiff to use said implement in an unskillful and dangerous manner, the plaintiff himself being inexperienced in the work in which he was engaged, and by reason thereof was ignorant of the danger to which he was being exposed by said agent; and third, that Sutcliffe was, on December 1, 1881, directing and controlling plaintiff and other employes by appointment and authority of defendant, etc. The issues whether defendant was guilty of negligence, and whether plaintiff was guilty of contributory negligence, and whether Sutcliffe was or was not the authorized agent of defendant in its workshop on December 1, 1881, and whether defendant through its said agent was or was not guilty of negligence, are each questions of fact to be determined by the jury from the evidence before them and the law given in the charge. Every issue of fact must be decided by the jury in accordance with the preponderance or weight of the evidence."

We do not think the foregoing extract from the charge, disconnected from the preceding sections of it, are fairly susceptible of the construction contended for.

A careful analysis of the paragraph containing the sentence objected to we do not think supports the assignment, but certainly when read with the preceding instruction with which it is coupled and made by its own terms a part of it is not subject to the criticism upon it. The preceding section, among other things declared to be necessary to support a recovery, instructs the jury that "if they believe from the evidence that the piece of timber furnished plaintiff was not under existing circumstances a proper instrument for blocking the colliding locomotive, and that plaintiff from his inexperience in such work was ignorant of the fact that the piece of timber handed him was not a suitable implement with which to execute the order given him, but that defendant's agent knew or ought to have known it and he permitted plaintiff to use it without advising him of the danger in using such an implement, such conduct on the part of the defendant's agent would be negligence for which the defendant would be responsible to the plaintiff for any injury resulting to him from such negligence; and so if the jury believe from the evidence that the timber used by the plaintiff in executing the order given him was a suit-

able implement, but that the plaintiff under the instruction and guidance of the defendant's agent and representative was led to use the implement in an unskillful manner, and by reason of which plaintiff received the injury of which he complains, the defendant would be responsible to plaintiff for such injuries unless the jury believe from the evidence that the plaintiff realized the danger in following the instructions of said agent and without protest took the risk, and if they so believe the jury are instructed that the plaintiff would be guilty of what the law denominates contributory negligence, and he can not recover damages from the defendant company."

This instruction submitted it as a question of fact to the jury whether the plaintiff from his inexperience in the work engaged in realized the danger to which he was exposed, and presented fairly all of the essential issues involved in the case.

The sixth assignment is that the court erred in refusing the following special charge requested by the defendant: "The degree of care required of defendant in furnishing safe implements and appliances for its workmen is that of ordinary care. The company is required to use only those in ordinary use in and about its workshop and yards. And unless the jury are satisfied from a preponderance of the evidence that there are other and more suitable and safe implements in use by railways as fenders between engines or cars being moved about their yards or workshop than of the character of the fender used in this case the plaintiff can not recover."

The court had already charged that "it was the duty of defendant to use due care in the protection of its employes, and that they on the other hand assumed the ordinary risks incident to their employment." However correct may be a part of the requested instructions it certainly does not apply the correct rule fixing the defendant's liability. Under this instruction if the only ground of plaintiff's recovery was based upon the single issue of the safety of the implement used or furnished the charge was correctly refused. It was calculated to lead the jury to infer that a railroad tie casually employed to block colliding engines or cars was to be treated as an implement or appliance adopted and in general use upon railroads. Under the charge this would enable the company to successfully defend in any case where injuries were the result of implements being wholly unfit for the purpose used upon the ground that it used none better for that purpose. Again plaintiff was entitled to recover for injuries occasioned by the negligence of appellant's agent in not informing him of a danger which it was his duty to know, and which from the inexperience of plaintiff and the position he occupied he did not know. The requested charge ignores that feature of the case. There was no error for both of the reasons mentioned in refusing it.

With respect to the seventh assignment, which relates to the refusal of the court to give the special charge asked by the defendant, to the effect

"that the jury must be satisfied from a preponderance of the evidence that the implement or appliance furnished plaintiff as a fender to work with and through which the injury occurred was not a suitable and proper implement, and that plaintiff did not know the same was unsafe and unsuitable and could not have known it by reasonable care, observation, and inspection," it is sufficient to say that it is in plain language embraced in the general charge.

The jury were told that to authorize a recovery and a verdict for plaintiff the evidence must show, first, "that plaintiff was injured in the employment of the defendant; second, that the injury was the immediate result of the negligence of Sutcliffe in permitting plaintiff to use an improper implement in executing his order, the plaintiff being *ignorant* that said implement was an improper one," etc.

The jury were also instructed in effect in another part of the charge that "if they believed from the evidence that plaintiff realized the danger in following the instructions of said agent, and without protest took the risk, he could not recover." These instructions fairly submitted the issues made by the evidence. There was no testimony controverting the fact of plaintiff's inexperience, and none having any tendency to show that at the time of the injury the plaintiff had any knowledge of the difference in the height of the engines, the unsuitableness of the implements, or that by the exercise of any reasonable care or observation he could have had such knowledge.

What we have said with reference to the foregoing assignments we think disposes of the tenth assignment, which seems to be a grouping together of those preceding it.

The eleventh error assigned is that the verdict is excessive and exorbitant, and it is argued that it was influenced by the evidence admitted as to the condition of plaintiff's mind. That the mental pain or distress which resulted naturally from the injury is an element of damage is well settled. If the verdict in this case was influenced by any improper motive or by anything else than a consideration of the evidence it is not shown. The testimony of the surgeon who attended the plaintiff is in substance that the left thigh bone was badly fractured, the knee joint stiffened so as to be immovable and precludes his following his trade as plumber or any kind of manual labor requiring active use of his limbs; that he suffered great pain resulting from the fracture which could only be remedied by a surgical operation at a great risk of his life. The cause of the pain he testified is "the presence of the broken parts of the thigh bone on the surrounding tissues," and that "there is no prospect of banishing the pain he endures," except at the risk stated. The plaintiff is compelled to walk with the aid of crutches, and he describes his mental and physical pain as great. The latter is described as similar to "that of a red hot iron running into the marrow." The injury has made him a cripple

for life, etc.   The verdict upon the former appeal about a year since was for $11,231.25.   Upon this appeal it is for the sum of $12,000.   There is nothing in the record which will enable us to say that under the evidence the verdict is so disproportionate to the injuries received by plaintiff as to authorize the conclusion that it was prompted by an improper motive.   We find no error in the judgment and are of opinion that it should be affirmed.

*Affirmed.*

Adopted March 19, 1889.

Chief Justice Stayton did not sit in this case.