TEXARKANA & FT. S. RY. CO. v. SCHEVOIGHT et ux.    (No. 43.) *

(Court of Civil Appeals of Texas. Beaumont. Dec. 11, 1915. On Rehearing, Jan. 13, 1916.)

1. EVIDENCE ⬤⟿10—JUDICIAL NOTICE.
The courts will not take judicial notice of the scenic beauty along the line of a railway company.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 9–14; Dec. Dig. ⬤⟿10.]

2. CARRIERS ⬤⟿277 — CARRIAGE OF PASSENGERS—ACTIONS—DAMAGES.
As the law furnishes no rule for estimating damages for mental anguish, and the jury's award will not be disturbed unless they are actuated by improper motives, an award of $425 in favor of plaintiff who was negligently carried to a different place from that to which she had secured a ticket, and who was exposed to ridicule and long delays in reaching her destination, cannot be held excessive, though the line over which plaintiff was wrongfully carried was one of great scenic beauty.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1082–1084; Dec. Dig. ⬤⟿277.]

Error from District Court, Jefferson County; John M. Conley, Judge.

Action by C. J. Schevoight and wife against the Texarkana & Ft. Smith Railway Company. There was judgment for plaintiffs, and defendant brings error. Affirmed.

Hightower, Orgain & Butler, of Beaumont, for plaintiff in error. H. V. Tucker, of Liberal, and V. A. Collins, of Beaumont, for defendants in error.

MIDDLEBROOK, J. This is a suit by C. J. Schevoight and his wife, Lula Schevoight, against the Texarkana & Ft. Smith Railway Company, in which the plaintiffs, defendants in error here, sought to recover damages of the defendant, Texarkana & Ft. Smith Railway Company, plaintiff in error here, for wrongfully and negligently carrying plaintiff's wife, Lula Schevoight, to a different place from that to which she had secured a ticket.

Briefly stated, C. J. Schevoight was at Port Arthur, Tex., having gone there ahead of his wife, and prepared a home. They were at Quitman, Miss., prior to his going to Port Arthur. After he had prepared a home at Port Arthur, he sent his wife a railroad ticket to Quitman, Miss., to come to him at Port Arthur. She received the ticket, and started on her journey to Port Arthur, but when she reached Beaumont she was in a car that was cut out of the train that went to Port Arthur, and this car was attached to another train and carried to Galveston. At Shreveport she inquired of the conductor for the train to Port Arthur, and the conductor placed her in the car she was in when she arrived at Beaumont. She knew nothing of any change at Beaumont, nor was there any announcement in the car that she was in that it would be cut out of the Port Arthur train and would be carried to Galveston, and she was carried some 20 miles out of Beaumont when she learned that the car she was in was going to Galveston, and not to Port Arthur. She learned this through the conductor, who came to take up her ticket. The conductor insisted on her paying railroad fare, but she refused, and did not pay it. The conductor told her that she should get off at Port Bolivar, and there remain until the next train back to Beaumont, which she did. When the conductor told her she was on the wrong train, it attracted the attention of others in the car, and she was laughed at and humiliated. It was hot weather, and she could not stay on the galleries of the little station at Port Bolivar, and requested the railroad agent there to let her go to his home, which he did. She remained at his home the balance of the day from about noon until 7 p. m., and was treated kindly by the agent's family, but the agent's family had supper while she was there, and she was not invited to participate

in the meal. About 7 o'clock she boarded the train from Port Bolivar back to Beaumont, arriving in Beaumont about 12 o'clock at night, and in Beaumont had to pay hotel bill, hack hire, etc., stopping while in Beaumont at the Crosby House. After she arrived back in Beaumont she communicated with her husband by telephone, and apprised him of her delay, etc. Her baggage was checked through from Shreveport to Port Arthur. She was already weary from traveling, and when she learned that she was on the car going to Galveston, instead of to Port Arthur, she thought of her baggage going on through to her home, and the impressions it might make upon her husband, and, all taken together, she suffered intense mental anguish, and for about a week afterward she was sick and suffered, but did not take her bed, nor call a physician to attend her. While in Port Bolivar she tried to communicate by long-distance telephone with her husband, but could not, and there was no telegraph station at Port Bolivar. She reached her home at Port Arthur between 8 and 9 o'clock the next day. The ticket was wired to her by her husband, and when she got to Shreveport she wired her husband. She had no acquaintance in Beaumont. She paid transportation from Port Bolivar back to Beaumont. When the conductor informed her that she was on the wrong road and going to Galveston, instead of to Port Arthur, it humiliated and distressed her, because everybody stared and laughed at her.

The only error assigned in this case is:

"The verdict of the jury in favor of the plaintiff in the sum of $425 to Lula Schevoight is excessive in amount, and unwarranted by the evidence, and shows that the jury was controlled by prejudice and passion, or some other improper motive."

Defendants in error object to consideration of this assignment of error for several reasons, which likely are not without merit; but, on account of conditions which it is agreed by counsel on both sides surrounded them at the time the motion for a new trial was overruled by operation of law, we have decided to consider the whole record.

In his argument attached to his brief plaintiff in error avers that much of the line of railroad between Beaumont and Galveston passes along the Gulf of Mexico, and affords a beautiful view; that there are several stations between Beaumont and Port Bolivar, at any of which she could have disembarked from the train and been back in Beaumont by automobile within a short while, and several of said stations are on shell roads.

[1, 2] It is likely true that this railroad does afford a splendid view that would be a delight to one in pursuit of pleasure. The court will not take judicial knowledge of such matter, and the writer hereof has never traveled this particular line to Galveston, and is unable to either confirm or dispute this statement in appellant's argument in his brief,

but there is nothing in the record as it stands before us to support such argument, and, if there was, we are not willing to say that such scenery would have been a delight to this woman, who was wanting to go home, instead of on a pleasure trip. The fact is to some æsthetic person it might have been an actual delight to have been carried away from the place he was wanting to go, just as this woman was, but the jury has found that it was not a delight to her, and she suffered in consequence thereof, and under the authorities on this line, as handed down by our Supreme Court, we do not feel competent to say just how much the lady suffered under the conditions. In the language of our Supreme Court, which has been often repeated:

"The law furnishes no rule for estimating damages for mental anguish; this is left to the discretion of the jury, and that discretion will not be controlled or the verdict vacated, unless it appears from the amount for which the verdict is returned, together with other matters disclosed by the record, that the jury may have acted from prejudice or other improper influence, rather than an honest desire to award adequate compensation for the injury." 73 Tex. 430, 11 S. W. 388.

So far as we are able to see, there is nothing in this record that discloses any undue influence upon the jury, or that discloses or tends to disclose that the jury acted from any other than what, under the evidence of the case, appealed to them to be a proper verdict.

Such being the case, we do not feel it the province of this court to disturb the findings of the jury and the judgment of the court. Howard Oil Co. v. Davis, 76 Tex. 630, 13 S. W. 665; Railway Co. v. Profert, 72 Tex. 344, 10 S. W. 207; Railway Co. v. Douglas, 73 Tex. 325, 11 S. W. 333; Western Union Tel. Co. v. Simpson, 73 Tex. 422, 11 S. W. 385; and cases in these authorities cited.

The case is affirmed.

### On Rehearing.

Having read and considered the motion for rehearing filed in this case by the able counsel for the plaintiff in error, we see no reason for any change in the original opinion, as handed down by this court. Plaintiff in error's motion for rehearing is therefore overruled.