14705

SUN INSURANCE OFFICE, LIMITED, v. FOIL

(197 S. E., 683)

184

*Messrs. Hannon & Lancaster* and *Johnson & Johnson,*
for appellant,

*Messrs. Odom, Bostick & Taylor,* for respondent, cite:

June 8, 1938.

The opinion of the Court was delivered by MR. JUSTICE
BONHAM.

The appellant brought action against the respondent to
recover actual and punitive damages for the alleged willful,

fraudulent and unlawful conversion of its automobile. The allegations of the complaint upon which the essential issue involved in this appeal turns, are as follows:

"4. That, on or about September 28, 1932, the automobile described above was located in the possession of the defendant; that the defendant was advised that the title and ownership of the property was in the plaintiff, that said car was a stolen car, that it was the property of the plaintiff; and that the plaintiff's agent, W. A. Coble, identified the car to the defendant by checking the motor and serial numbers, and thereupon made demand for the possession of the property.

"5. That the defendant willfully, knowingly, and unlawfully, and after notice, and with fraudulent intent to deprive plaintiff of its property, refused to surrender possession of the property and thereafter disposed of the same by sale, all of which was done to defeat and in fraud of the plaintiff's rights; and that, by said acts, the plaintiff (defendant?) fraudulently converted to his own use the plaintiff's property and proceeds thereof. The value of the property at that time, as plaintiff is informed and believes, was Two Hundred Fifty Dollars ($250.00)."

For answer, the respondent set up, (1) a general denial; (2) that he purchased the car, paying a valuable consideration therefor; (3) the laches of plaintiff in bringing its action; (4) the statute of limitations.

On the trial of the case, the plaintiff offered to prove that the defendant, Foil, had been indicted in the District Court of the United States for the Western District of South Carolina on the charge of receiving, concealing and storing a Chrysler sedan, a Buick sedan and a Nash coupé, knowing them to be stolen. In another indictment in the same Court, he was charged with conspiracy to violate Section 37 of the Penal Code, 18 U. S. C. A., § 88; he plead guilty to both indictments. The defendant's attorneys objected to the admission of this evidence. The Court said:

"It appears to be an attack upon the character of this defendant. His character at the present, of course, this being

a civil action, is not put in issue at all. I don't think it is competent. Objection sustained not only upon the ground of incompetency but on the ground that it would be very prejudicial to the defendant. I will have to exclude this testimony."

At the conclusion of plaintiff's evidence, the defendant moved for a nonsuit as to both actual and punitive damages. The motion was granted by the following order of the Court:

"This was an action which sought to collect from the defendant actual and punitive damages, it being alleged in the complaint that the defendant, after notice of plaintiff's interest and title to a certain automobile described in the complaint, fraudulently and willfully converted the said automobile to his own use by running same and conveying same to a third party.

"When the plaintiff rested its case defense counsel moved for a nonsuit as to both actual and punitive damages on the ground that the evidence failed to show that the defendant had in fact converted the property in any of the particulars claimed by the plaintiff after notice. I find as a matter of law that there is no such proof and it is

"Ordered, that the motion for a nonsuit be and same is hereby granted."

The plaintiff appeals upon three exceptions, each of which contains subdivisions. In their brief counsel for appellant state the questions involved to be: 1. Error to grant nonsuit in an action for alleged willful, unlawful and fraudulent conversion of plaintiff's automobile, where evidence showed that the stolen automobile was found in defendant's possession, that defendant was notified that it was stolen, and demand was made for its return, and demand refused. (2) Error for the Court to exclude evidence of similar acts and offenses committed by the defendant about the same time as the alleged conversion in the instant case, offered to show guilty knowledge, intent and design of defendant.

In granting the motion for nonsuit, his Honor said:

"On the question of punitive damages I cannot see any evidence to go to the jury. On the question of actual damages, the plaintiff as I recall it shows that when the representative of the plaintiff called on the defendant in regard to this case the car was identified as being a stolen car. At that time the defendant notified the representative of the plaintiff that the car had been sold to a man named Hanson. The title was in Hanson, the defendant had no right to give possession to the representative of the plaintiff and this action being one for conversion after notice I cannot find any testimony as proof that the defendant after being notified by the agent of the plaintiff converted the car to his own use by sale or otherwise. I don't think the proof is sufficient to warrant my sending the case to the jury. Because, really under the evidence I don't know what to ask the jury to pass upon because of failure of proof in these reasons I will grant the nonsuit generally."

The two questions may be considered together. In granting the motion for nonsuit, the Court· said, the motion is made "on the ground that the evidence failed to show that the defendant had in fact converted the property in any of the particulars claimed by the plaintiff after notice. I find as a matter of law there is no such proof." There is evidence that the plaintiff owned the car; that it was stolen from plaintiff's agent; that it was found in defendant's possession; that defendant was notified that it was a stolen car, and demand made for its possession, which demand was refused; that defendant had sold the car to Hanson, and had repossessed it, and then had it in his possession; that the finance corporation had financed the buying of the car.

We think there was evidence to take the case to the jury on the issue whether the defendant converted the car to his own use after notice that it was stolen.

"A conversion may arise either by a wrongful taking of the chattel, or by some other illegal assumption of ownership, by illegally using, or by misusing it; or by a *wrongful de-*

*tention;* perhaps more accurately defined by another writer thus; a conversion seems to consist of any tortious act, by which the defendant deprives the plaintiff of his goods, either wholly or but for a time. Any act of the defendant inconsistent with the plaintiff's right of possession, or subversive to his right of property, is a conversion. Here the defendant, after the accrual of the plaintiff's title, and right of possession, having the slave in his own hands by purchase from one who had no title, sold him to another who carried him beyond the plaintiff's reach, and put the price in his pocket. If this be not a conversion, and a very effectual one too, it is difficult to imagine what would constitute a conversion. The argument is, that inasmuch as the defendant was not aware of the plaintiff's title, he is not liable after the sale. *It is not denied that he would be liable if he had retained the property, and refused to give it up."* (Italics added.) *Harris v. Saunders,* 2 Strob. Eq., 370, note.

His Honor, in his order of nonsuit, found as a matter of law that there was no evidence to show that the defendant had converted the property in any of the particulars claimed by the plaintiff, after notice.

This brings us to the consideration of the issue made by the second question of the appeal, viz., that it was error to exclude the evidence of similar acts and offenses committed by the defendant. If that evidence had been admitted, there would have been proof of conversion proper to go to the jury.

The able trial Judge predicated his ruling, by which he excluded the offered evidence, on the ground that it was an attack on the character of the defendant, which had not been put in evidence.

We think his Honor had in mind the general rule that the character of one may not be attacked unless he has himself put it in evidence, as that rule relates to criminal cases, or where in civil cases it relates to the credibility of one as a witness or litigant, and overlooked the rule, which is an exception to the general rule, and which

holds that where the motive, the intent, the purpose of defendant is an issue involved in the case by the pleadings, the conduct and acts of the defendant in special or specific incidents or occurrences of like nature may be shown; not to attack his character, but to show that he has done acts of the very nature of that involved in the case being tried.

This matter is exhaustively treated by Dr. Wigmore in his work on evidence; under the caption:

"Conduct independently usable evidentially for Other Purposes than to show Character (Design, Intent, Motive, etc.).

"General Principle. Suppose A to be charged with robbing the till in a store of which he is a sale-clerk; and suppose the facts to be offered against him (1) of having stolen the key of the till in the preceding week; (2) of having falsified his sale-book recently; (3) of having suffered large losses in gambling. From the point of view of the foregoing subject (conduct to show character in issue), these acts will all tend to show that he was of a dishonest and reckless disposition, and therefore disposed to steal from the till if the opportunity offered. But from that point of view such acts would be wholly inadmissible, either in proving the charge in opening, or in rebutting his evidence of good character (ante, Section 194). But that is not the only possible point of view. These acts may be relevant in other ways to show the commission of the crime, without in any way employing or suggesting their inference as to his character. They may justify other inferences which go to show his doing of the act charged. Thus, the purloining of the key may found an inference of design or plan,—a plan to use the key in some unlawful way for obtaining access to the till; or it may show knowledge,—knowledge of the whereabouts of the till and its valuable contents. So the falsification of his sale-book may show a Motive,—the desire to prevent his larcenies from being discovered; or it may show Design,—a general design to obtain money from his employers unlawfully. So the gambling losses may show Motive

in another way,—the need and desire for money at any cost, to pay his losses. Whatever tended ordinarily to show such Knowledge or Design or Motive would otherwise have been admissible; and these acts are merely instances, from a variety of evidence, of classes of facts which would be evidential for their respective purposes.

"Now this double or multiple possibility of use is an extremely common feature of evidence; and it is a well-established principle, applied in numerous ways that the inadmissibility of an evidential fact for one purpose does not prevent its admissibility for any other purpose otherwise proper. * * *

"So far, then, as this general rule is concerned, the fact that a defendant's acts of misconduct would be inadmissible as showing his bad character does not in the slightest stand in the way of receiving the same acts in evidence if they are evidential for other purposes." 1 Wigmore on Evidence, Section 215.

In our present case, in which the defendant is charged by the complaint with having converted to his use a stolen car with knowing that it was stolen, it was competent to show by evidence that he had plead guilty to receiving, concealing and storing other cars knowing them to be stolen, not for the purpose of attacking his character, but for the purpose of showing the motive, intent, and design in the instant matter.

This is supported by 22 C. J., p. 484, Section 583, as follows:

"Independent Relevancy: Specific instances of conduct, especially where these have developed the regularity and force of a habit may be independently relevant as to establish consent, motive, belief, or probable cause in an action for malicious prosecution, and such an act will not be excluded simply because it tends to show character.

In their argument, appellant's counsel quote from 7 Encyclopedia of Evidence 627, the following:

"b. Other Similar Acts and Offenses.—(1) In General.— In all cases in which the guilty knowledge or intent of a party in the act or transaction in question is an essential element, evidence of other similar acts or offenses committed by such party, or in which he bore a part, and happening at or about the same time, is relevant and competent to show such intent."

In support of such declaration of the rule, counsel cited the case of *Brown v. Newell*, 64 S. C., 27, 41 S. E., 835.

In their argument, counsel for respondent say:

"The citation from *Brown v. Newell*, 64 S. C., 27, 41 S. E., 835, is from the dissenting opinion in that case."

Perhaps, strictly speaking, the language quoted is taken from the dissenting opinion. But it must not be inferred that the prevailing opinion held that the introduction of evidence of other similar acts was wrong, or that such evidence was inadmissible. It appears from an inspection of the prevailing opinion written by Mr. Justice Pope, that he did not question the relevancy and admissibility of such evidence, but he sought to show by it (and so held), that the similar acts relied on to show fraudulent intent were innocent and lawful acts. Mr. Chief Justice McIver, who wrote the dissenting opinion, said (page 849):

"In connection with the questions of fact, we will next consider the admissibility of certain testimony received over the objection of appellant, to wit, the testimony as to other transactions of a similar kind with McCoy, Ellison, and Keaton, claimed to be for the same fraudulent purpose on the part of the appellant, Cooley, to evade the payment of his taxes. The ruling of the circuit Judge upon this point is fully sustained by the authorities."

The decree of the Circuit Judge is reported in connection with the opinions in the case. The Circuit Judge said:

"The evidence shows that the Hardin transaction was not the only one of this character had by Cooley. He had at least three other transactions of the kind, where the notes and mortgages were taken in the name of one H. D. Hall, a

resident of the State of Texas, when the money loaned was his own. I hold as a matter of law that the Special Referee did not err when he admitted testimony as to these other transactions on the part of Cooley, for the purpose of showing Cooley's scheme, and the exception of defendant, Cooley, imputing error to the Special Referee in admitting this testimony is hereby overruled."

As we have said, the ruling of the Circuit Judge, sustaining the ruling of the Special Referee, hereabout, was not overruled by Mr. Justice Pope in the prevailing opinion, but on the contrary the testimony was reviewed and considered by him for the purpose of showing that the transactions named were not fraudulent. The effect of his actions was to sustain the admissibility of the testimony, and in that respect the ruling of the dissenting opinion was in accord with it.

The ruling of the Courts as stated in the *Brown v. Newell* case, *supra,* is sustained by the decisions of the United States Supreme Court.

In the case of *Butler v. Watkins,* 13 Wall., 456, 20 L. Ed., 629, this is said:

"Hence, in actions for fraud, large latitude is always given to the admission of evidence. If a motive exist prompting to a particular line of conduct, and it be shown that in pursuing that line a defendant has deceived and defrauded one person, it may justly be inferred that similar conduct towards another, at about the same time, and in relation to a like subject, was actuated by the same motive."

In *Lincoln v. Claflin,* 7 Wall., 132, 19 L. Ed., 106, this occurs:

"On the trial declarations of the defendants were received, which related not merely to the transaction which is subject of inquiry in this action, but to similar contemporaneous transactions with other parties. The evidence was not incompetent or irrelevant, as contended by counsel. Where fraud in the purchase or sale of property is in issue, evidence of other frauds of like character committed by the same parties,

at or near the same time, is admissible. Its admissibility is placed on the ground that where transactions of a similar character, executed by the same parties, are closely connected in time, the inference is reasonable that they proceed from the same motive. The principle is asserted in *Cary v. Hotailing,* 1 Hill [N. Y., 311], 317 [37 Am. Dec., 323], and is sustained by numerous authorities. The case of fraud, as there stated, is among the few exceptions to the general rule that other offences of the accused are not relevant to establish the main charge. *Hall v. Naylor,* 18 N. Y., 588 [75 Am. Dec., 269] ; and *Castle v. Bullard,* 23 How., 172 [64 U. S., 172, 16 L. Ed., 424]."

We may here remark that in the case now on appeal before us, the defendant is charged in the complaint with fraudulently converting to his own use the plaintiff's property and proceeds thereof.

In the case of *Castle v. Bullard, supra,* we find this :

"One class of them [exceptions] arises out of objections to the admissibility of evidence offered by the plaintiff, tending to show that the defendants, or some of them, had aided the purchaser in this case in committing similar acts of fraud in the purchase of other goods, about the same time, from other persons. According to the evidence some of those purchases were prior and others subsequent to the period of the sale of the goods in this case. All of this class of exceptions may well be considered together, as they involve the same general principles in the law of evidence. Decided cases have established the doctrine that cases of fraud like the present are among the well-recognized exceptions to the general rule, that other wrongful acts of the defendant are not admissible in evidence on the trial of the particular charge immediately involved in the issue. Similar fraudulent acts are admissible in cases of this description, if committed at or about the same time, and when the same motive may reasonably be supposed to exist, with a view to establish the intent of the defendant in respect to the matters charged against him in the declaration."

We think the authorities cited amply support the rule that when the issue to be proved is one of motive, design or intent proof of individual acts is admissible, even though it relates to wrongful conduct on the part of the defendant.

In his order granting the motion for nonsuit the presiding Judge found as a matter of law that there was no proof that the defendant had in fact converted the property in any of the particulars claimed by the plaintiff. The witness, Coble, testified that the defendant refused to deliver the car to him, saying it was the property of the finance company. On cross examination by defendant's counsel this witness testified that the defendant told him that he bought the car from one Pye; that he bought it at the sheriff's sale; that it was sold as the property of a bootlegger, one Mills; that he had sold the machine to someone else, who was delinquent in his payments and he had repossessed it. It was then on the second or third floor of his building; that the car had been bought by one Hanson, and that he financed the buying of the car through the C. I. T. Corporation. Here is evidence that defendant had bought the car from Pye, and had sold it to Hanson. That is certainly conversion. It is in proof that the car was stolen; defendant acquired no title to it, and could convey none to Hanson. The case of *Harris v. Saunders,* cited herein from 2 Strob. Eq., 370, note, is especially in point to sustain this proposition.

The evidence offered to prove that defendant had plead guilty to three or four acts of a similar nature to this one was pertinent, and was in support of the evidence referred to above.

Defendant's counsel argue that there is no evidence to show when the indictments were returned, or when the plea of guilty was made.

When Mr. White, the Clerk of the Court, was asked, "if during the time you were Clerk of the United States Court for the Western District of South Carolina R. E. Foil was

ever indicted by the Grand Jury?," the defendant's counsel objected to the testimony and the objection was sustained. If the proof had not been thus excluded, the indictments would have furnished the very proof, the absence of which is the ground of defendant's contention.

It was error to exclude this evidence, and error to grant the nonsuit.

The judgment of the Court below is reversed, and the case is remanded for retrial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.

MR. JUSTICE CARTER did not participate on account of illness.