## HOYLER v. CITY OF LONGVIEW.

### No. 5394.

Court of Civil Appeals of Texas. Texarkana.

May 11, 1939.

Lacy, Price & Williams, of Longview, for appellant.

Fred Erisman, of Longview, for appellee.

WILLIAMS, Justice.

Appellee, the City of Longview, a municipal corporation, acting under the provisions of Article 1105b, Vernon's Ann. Civ.St. and other relevant statutes, caused an underpass to be constructed and its approaches paved on High Street adjacent to property owned by appellant, Mrs. Laura Hoyler. The city levied a special assessment for a pro rata cost of the improvements against her and this property. This suit was instituted by Mrs. Hoyler in the nature of an appeal from the assessment, and in addition she sought damages because of the lowering of the grade of the street next to her property. Appellee, in addition to various pleas not necessary to mention, denied that her property had been damaged, and under the provisions of Sec. 9 of Art. 1105b, supra, asserted the assessment of $736.12 was not in excess of the special benefits of such property and its owner in the enhanced value thereof by reason of the improvements. In response to special issues, being the only issues submitted, the jury found $6,000 to be the cash market value of her property before this construction and $6,750 to be its cash value immediately thereafter. This is an appeal from the judgment which denied appellant a recovery and held the said assessment and lien to be valid. We take no further notice of any provisions of Article 1105b, for this appeal involves only alleged misconduct of the jury in arriving at their answers to above two issues.

Appellant's property was situated at the southwest corner of the intersection of High Street and West Tyler Avenue. A

filling station on this property fronted north on West Tyler Avenue. Her warehouses which faced a railroad loading track was located in the rear. The cut for the underpass began at the street level on West Tyler, and sloped to fourteen feet deep at appellant's south boundary line. Concrete retaining walls with banisters were erected to within twenty-five feet of her north line. Appellant by her evidence contended that this lot was on the street level and easily approached from all points adjacent to it on High Street prior to the construction of the underpass; that this cut and retaining wall had practically eliminated the means of ingress and egress from her property from High Street; that vehicles could enter her property only from West Tyler Avenue, and to reach the warehouses would have to drive across the filing station premises and track mud and dirt onto it; that the improvements had interfered with the natural drainage and caused water to remain in puddles on her property. She offered evidence in support of the money damages.

Appellee by its evidence asserted that High Street at this location prior to the improvement was rough, bumpy, and unpaved; that mud puddles remained in High Street after a rain; that there existed a ditch and high bank on and next to this property; that the railroad crossing at appellant's southeast corner was on an incline and a dangerous crossing; and that appellant's lot had retained mud puddles after a rain. Appellee asserted that after the underpass had been constructed this street had become a part of a state highway and a large volume of traffic had been diverted over it. Evidence was offered that this increased traffic would enhance the value of this property.

The jury deliberated between two and three hours before reaching a verdict. At the beginning of their deliberations some of the jurors thought and so expressed themselves that the property had been injured instead of being benefited. Some of the jurors had traveled over and by this location before and after the improvements were made. In their discussion before a verdict was reached, two or three of the jurors who knew the property told what they personally knew about the condition of the street before it was paved and described the way it looked to them before and after the underpass was built. As one juror expressed it, "They told there was a ditch over there next to where this property

is now, or a little bridge that gave access to that warehouse, but at that time you had to cross a bridge to get to it," and that "the street was rough and uneven, and you couldn't see over it, it was up and down." In the language of another juror, "One of these fellows, I don't remember which one, said he personally knew it was a fact." The record further discloses that some of the jurors during the progress of the trial passed this property in going home. One testified that he looked at the underpass and property "to get some idea about it and make a closer examination while passing it than he had before." Another expressed himself, "In passing by the property I did look at it with a view of getting some idea about it myself." In answering the questions, "I went by the testimony and by looking at the property also."

It is obvious that some of the jurors, though innocently, became unsworn witnesses in the jury room and gave evidence upon the very issues involved in this suit. The other jurors who heard their statements as to what they personally knew about the status of the street and property thus received new evidence during their deliberations. Likewise, those jurors who viewed the property during the progress of the trial received other evidence not introduced in the trial. This amounts to misconduct of the jury. These statements and acts of the jurors were material as they dealt solely with the disputed question as to whether the property was injured or benefited. They were divided on this issue at first. Later they agreed.

As stated in Elizondo v. Reagan, Tex. Com.App. 55 S.W.2d 540, 542: "It is the settled law of this state that, where the jury is guilty of misconduct, and where from the whole of the pertinent record it is reasonably doubtful to the Supreme Court itself whether such misconduct affected the verdict on any material question, such verdict should not be allowed to stand." (Citing authorities).

See, also, Kennard v. Kennard, Tex.Civ. App., 26 S.W.2d 336, writ refused; Letsinger v. Panhandle & S. F. R. Co., Tex. Civ.App., 286 S.W. 1107, writ dismissed; Moore v. Ivey, Tex.Com.App., 277 S.W. 106; Article 2234, R.C.S.; 41 T.J. p. 850, Sec. 102.

The foregoing authorities require this cause to be reversed and remanded, and it is accordingly so decreed.