**Floyd WALLACE, Appellant,**

v.

**J. B. PARTIN, Appellee.**

**No. 10871.**

Court of Civil Appeals of Texas.

Austin.

April 26, 1961.

Rehearing Denied May 17, 1961.

Fulmer, Fairchild & Badders, Nacogdoches, for appellant.

Marion G. Holt, Nacogdoches, for appellee.

HUGHES, Justice.

J. B. Partin, appellee, in a trial to a jury obtained judgment against Floyd Wallace, appellant, for partition, by sale, of certain saw mill personal property.

. The only error assigned by appellant is that there was jury misconduct of such seriousness as to entitle him to a new trial.

Appellant's defense to the suit for partition was that he had purchased appellee's one half interest in the saw mill property, and that he owned it all. This was a disputed issue, the jury finding against appellant.

Appellant was a material witness in his own behalf.

After the jury had deliberated several hours without reaching a verdict, one of the jurors, Mrs. Willie Davis, approached her fellow juror, Mr. Ray Driver, and stated:

"Ray, we are fighting a losing battle, we might as well give over, because I have always heard that Sonny Wallace was in court a lot and he was crooked and we might as well go over with the rest. Well, in a few minutes after that happened, Mr. Petty (the foreman) came back in and—with a paper, he came back in and we made a decision a second or two after that."

Prior to making this statement both Mrs. Davis and juror Driver had voted favorably to appellant on the issue of his purchase of the property.

Mrs. Davis amplified her statement by testifying that she stated in the presence of "some of the jurors" before a verdict was reached that she had heard "people say that (appellant) was as crooked as a barrel of snakes."

Mrs. Davis also testified that she had told juror Driver, before he changed his vote to appellee's favor, that appellant "was known all over the county where he did business to beat everybody that dealt with

him" and that he "would not pay his debts and was all time in a lawsuit with somebody he had mistreated."

Juror Driver confirmed the testimony of Mrs. Davis.

There is testimony that Mrs. Davis stated in the jury room that she had had dealings with appellant and that they were "fair" and "that if he couldn't pay you he would always come by and make arrangements to take care of his bills and they took his word."

A statement of facts on the merits of the case is before us and there is no evidence to warrant the remarks of juror Mrs. Davis concerning the hearsay reputation of appellant.

It is not disputed that Mrs. Davis made the statements which she and juror Driver testified she made nor the time nor circumstances when or under which they were made. The only other juror who testified on the motion was the foreman, Mr. J. D. Petty, who testified that he did not hear the statements, saying, however, "She could have said it and I didn't hear it." We do not believe that this was sufficient to present an issue as to whether or not the statements were made. The jury room was shown to have been large and, at times, jurors walked about; also that they talked at the same time.

It is always improper for a juror to introduce other evidence in the jury room. In this instance we believe the other evidence introduced by Mrs. Davis was material and prejudicial to appellant and that, considering the entire record, it reasonably appears that injury probably resulted to him. Rule 327, Texas Rules of Civil Procedure.

In Franzetti v. Franzetti, 174 S.W.2d 65, this court held that it was jury misconduct for one juror to tell another juror during jury deliberation that he knew one of the parties, and she was a "hell-cat".

In Thompson v. Goode, 221 S.W.2d 569, writ ref. N.R.E., the San Antonio Court of Civil Appeals held that a serious case of jury misconduct would be presented if a juror stated to the jury during its deliberation that he was personally acquainted with a material witness and that he was unworthy of belief.

We believe that the statement made by Mrs. Davis seriously reflected upon appellant's character, and that it was of such nature as to discredit his testimony, upon which his defense was primarily based.

 Jurors must confine their deliberations to matters admitted in evidence by the court, and matters of common knowledge. If they do not, verdicts and judgments will be based upon evidence about which the parties do not know and have no opportunity to explain or rebut. We know that new trials are expensive. We do not believe, however, that the cost of a new trial is too high a price to pay for a fair trial.

The judgment of the Trial Court is reversed and remanded.

Reversed and remanded.