Ivan J. ALLEN, Appellant,

v.

Patsy H. RIEDEL et al., Appellees.

No. 4194.

Court of Civil Appeals of Texas.

Eastland.

Jan. 19, 1968.

Rehearing Denied Feb. 16, 1968.

Turner & Seaberry, Virgil T. Seaberry, Jr., Bill B. Hart, Eastland, for appellant.

Thompson, Coe, Cousins & Irons, Dallas, Jack W. Frost, Eastland, for appellees.

GRISSOM, Chief Justice.

This suit was brought under the authority of Article 4671, known as the Wrongful Death Act. On Sunday, November 7th, 1965, Dr. Albert F. Riedel and his wife and their children, of Dallas, were visiting the Ivan J. Allens on the Allen ranch in Eastland County. Mrs. Allen was Dr. Riedel's aunt. Dr. Riedel, Mr. Allen and some of the Riedel children spent the morning building deer blinds on the ranch. About 30 minutes after they returned to the Allen home for lunch, a neighbor telephoned Mr. Allen that two car loads of people were climbing over his fence and suggested that he see them. He went to investigate. Dr. Riedel went along. When they reached the trespassers, Mr. Allen suggested to Dr. Riedel that he stay in the pickup. Mr. Allen put the trespassers off his ranch. Immediately thereafter, while Dr. Riedel was standing about 47 feet from Mr. Allen, in or near some trees and weeds, he was shot and killed by Mr. Allen. Dr. Riedel's widow and children sued Mr. Allen for the damages they suffered as a result thereof.

A jury found that (1) Mr. Allen deliberately aimed his rifle; that (1A) he was aiming at some person; that (2) he did not intentionally fire his rifle; that (6) in carrying his rifle with the safety catch in the "off position" Mr. Allen was guilty of negligence which (7) was a proximate cause of Dr. Riedel's death; that (10) Mr. Allen allowed his rifle to be pointed at Dr. Riedel and that (11) this was negligence and (12) a proximate cause of Dr. Riedel's death. The jury found the amount of damages sustained by Dr. Riedel's four children in varying amounts, ranging from $35,000.00 for Dana Scott Riedel, the oldest, to $78,000.00 for Allison Lynn Riedel, the youngest, and that Mrs. Riedel was damaged $50,000.00.

All issues inquiring what pecuniary loss a child sustained contained the same instructions with reference to what the jury might consider. To illustrate, issue 16, the instruction in connection therewith and the answer thereto were as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the Plaintiff, Allison Lynn Riedel for the loss sustained by her as the result of the death of her father, Albert Riedel?

In answering this issue, you are instructed that you may take into consideration only the pecuniary loss, if any, sustained by Allison Lynn Riedel, and nothing else. By the term 'pecuniary loss', as applied to Allison Lynn Riedel, you may take into consideration the loss of nurture, if any, care, if any, maintenance and support, if any, counsel, if any, intellectual, moral and physical training, if any, and education, if any, and pecuniary contribution she would have, in reasonable probability, received from her deceased father from the date of his death to the date of trial, and in the future.

In determining the amounts, if any, you may consider the earnings of the said

Albert Riedel, his age, and the condition of his health.

Answer by stating the amount, if any, in dollars and cents.

ANSWER: $78,000.00."

The issue, instruction and answer relative to the pecuniary loss of Mrs. Riedel were as follows:

"SPECIAL ISSUE NO. 17:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Plaintiff Patsy H. Riedel for the loss sustained by her as the result of the death of Albert Riedel?

In answering this issue, you are instructed that you may take into consideration only the pecuniary loss, if any, sustained by Patsy Riedel. By the term 'pecuniary loss' as applied to the wife, is meant maintenance and support, if any, from his earnings, if any, loss of contributions, if any, care, advice and counsel, if any, that the Plaintiff Patsy Riedel would have, in reasonable probability, received from the date of Albert Riedel's death to the date of trial and in the future, if any, from Albert Riedel had he lived.

In determining the amounts, if any, you may consider the earnings of the said Albert Riedel, his age and the condition of his health.

Answer by stating the amount, if any, in dollars and cents.

ANSWER: $50,000.00."

The court rendered judgment on said verdict in favor of Mrs. Riedel and the children for the amounts so found, plus $1780.00 funeral expenses, aggregating $260,780.00. Mr. Allen has appealed.

Appellant's first two points are that the court committed reversible error in excluding (1) evidence of the marital troubles of

Doctor and Mrs. Riedel and (2) evidence relative to Dr. Riedel's character and morals. Such excluded testimony, tersely stated, was as follows:

(a) testimony by Mr. Allen that Dr. Riedel told him that his wife was unfaithful; that she didn't love him; that he "couldn't make a go" of their marriage and that he came home early one day and found a naked doctor with his wife while she was wearing a red robe;

(b) testimony by Dr. Long, Mrs. Riedel's treating psychiatrist, that she told him that she and Dr. Riedel had accused each other of "running around" with members of the opposite sex;

(c) testimony of Dr. Long that Mrs. Riedel told him her husband had accused her of infidelity with more than one man;

(d) testimony by Dr. Riedel's treating psychiatrist, Dr. DeBolt, that Dr. Riedel told him he was involved with a young woman and concerned that it might lead to something sexual, with which subject he had experience;

(e) testimony of Dr. DeBolt that Dr. Riedel stated to him that he had found out that his wife had been unfaithful and of his reaction to that discovery;

(f) testimony by Dr. DeBolt of Dr. Riedel's statements to him that he was having an affair with another woman; that he had accused his wife of infidelity and that he had an increase in his drinking problem;

(g) testimony by Dr. DeBolt of Dr. Riedel's statements to him in 1965 concerning his mental turmoil, divorce and that he was not able to go back to his wife;

(h) testimony by Dr. DeBolt that Dr. Riedel told him of his affairs with other women; his belief that his wife knew about it; about striking his wife and that he contemplated divorce;

(i) testimony by Dr. DeBolt that Dr. Riedel told him that he and his wife had "traded partners" one night with another couple in a "necking episode."

In connection with appellant's contention that exclusion of such evidence was error and that it was reasonably calculated to cause and probably did cause rendition of an improper judgment he points out that the Riedel children, under the court's instructions, were permitted to recover for loss of Dr. Riedel's nurture, education and moral training, as well as loss of contributions, maintenance and support, and that Mrs. Riedel, under the instructions given, was permitted to recover for loss of maintenance and support from the doctor's earnings, loss of contributions and loss of the care, advice and counsel which she probably would have received from Dr. Riedel had he not been killed.

Appellees were permitted to introduce evidence, over appellant's objection that it was hearsay, that Dr. Riedel was posthumously awarded a plaque and citation for promoting a boys' swimming contest, which citation stated his "tremendous devotion to all the youth of this community and the outstanding contributions—to his fellow man." Appellees were permitted to introduce evidence that Dr. Riedel was conscientious, affectionate, in love with his wife, active in family affairs; that Mrs. Riedel was in love with him; that they both wanted their marriage to "work out." Mrs. Riedel testified that their marriage was a happy, normal one and that their only real problems were (1) Dr. Riedel's drinking and (2) petty arguments over money and she and Dr. Lewis denied that his drinking was a serious problem. Mrs. Riedel further testified to the effect that their marital problems had disappeared with the building of their last house in 1965.

Appellant says the excluded testimony would have tended to show the infidelity and lack of morals of Dr. Riedel as late as the summer and fall before his death in November, 1965; his belief of his wife's infidelity, where and with whom; their mutual suspicions of infidelity; that Dr. Riedel had

struck his wife; that Riedel's mind was in a turmoil in the fall of 1965; that he then said he could not go back to his wife; their improper involvement with others, but, chiefly, that it would have shown the principal cause of the Riedels' marital troubles and the extent thereof and demonstrated the likelihood of immediate divorce and termination of his support of Mrs. Riedel. The excluded evidence would have strongly bolstered Dr. Riedel's admitted statement that he was going to divorce his wife. It is appellant's contention that the Riedels' marriage was on the rocks when he was killed. The excluded evidence was highly persuasive of that conclusion and it was reasonably calculated to cause the jury to reduce its findings of the value of what Mrs. Riedel and the children lost as a result of Dr. Riedel's death. Among other things, it was calculated to cause the jury to conclude, contrary to what it evidently believed, that if Dr. Riedel had not been killed he would have soon divorced his wife and stopped supporting her and contributing to her. It was reasonably calculated to cause and probably would have caused the jury to find that her loss was much less than the $50,000.00 it found to be Mrs. Riedel's pecuniary loss. Here, it might be remembered that the record shows that several jurors, even without the benefit of the excluded evidence, wanted to give her nothing. Appellant says the excluded evidence indicates that the Riedels' problems were of such a serious nature that they probably would have resulted in divorce; that Dr. Riedel's conduct, as shown by the rejected testimony, was reasonably calculated to cause the jury to place a much smaller value on, among other things, the moral training that he probably would have given his children and a much smaller value on the support and contributions that he probably would have given his wife if he had lived. It is appellant's position that evidence relative to Dr. Riedel's morals and his attitude, intentions and feelings toward his wife and children were relevant, material and highly persuasive of answers more favorable to appellant on the damage issues.

Appellees say such evidence was not admissible because it was hearsay and that, in any event, it was cumulative. We agree with appellant's said contentions and sustain his points one and two.

Since the jury was instructed that in determining the pecuniary loss of the children it might consider the loss of their father's maintenance and support, care, nurture, moral training, education and contributions and that in determining the wife's damages they might consider her loss of maintenance and support from his earnings, loss of contributions, care, advice and counsel, it necessarily follows that all the rejected testimony which reasonably tends to affect the findings of the amount of damages suffered as a result of the loss of any of said things would be relevant and material and, unless prohibited for other reasons, should have been admitted.

The statements of Dr. Riedel indicating his belief that his wife was guilty of infidelity, stating places and with whom he thought she had been unfaithful, showing his attitude and feeling toward his wife and his intention to divorce her were material in determining the amount of support, maintenance and contributions she would have received had he not been killed. The rejected testimony strongly bolstered his admitted statement that he was going to divorce his wife, which action would have terminated his maintenance, support, contributions and care of Mrs. Riedel. The exclusion of such testimony, especially when it is considered with the admitted evidence that Dr. Riedel stated, about an hour before he was shot, that he was going to divorce his wife and further, that he said while dying, that he did not want his wife called because he did not want to see her, was reasonably calculated to cause the jury to believe that he had grounds for divorce and that he would have soon obtained a divorce and quit supporting her. Such evidence was important in determining the value of said things which his wife probably would have received from him had he

lived. It was reversible error to exclude said statements. They were evidence of his state of mind, his feelings toward his wife and his intention to speedily terminate his marriage and stop supporting her. It was probative of his disposition toward his wife, which has a "vital bearing upon the reasonable expectancy * * * of future assistance or support, if life continues * * the fact that such a declaration was made by the decedent, whether true or false, is compelling evidence of (his) feelings toward, and relations to (his wife). As such it is not excluded under the hearsay rule but is admissible as a verbal act." Loetsch v. New York City Omnibus Corp., 291 N.Y. 308, 52 N.E.2d 448. See also McCormick on Evidence 465–466; Texas Employers' Insurance Ass'n v. McDonald, Tex. Civ.App., 238 S.W.2d 817; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442; VI Wigmore, Evidence, (3rd Ed.), Sec. 1790; Hooper-Holmes Bureau, Inc. v. Bunn, 5 Cir., 161 F.2d 102, and Callen v. Gill, 7 N.J. 312, 81 A.2d 495.

The court erred in excluding said testimony because it tended to show facts from which the jury probably would have concluded that appellees' losses were, because thereof, less than they otherwise would have been. It tended to show that the said lost rights were of little value. It was so held in Miller v. Alexandria Truck Lines, Inc., 5 Cir., 273 F.2d 897, 79 A.L.R.2d 812, 818. In an annotation following that case in 79 A.L.R.2d, at page 819, it is stated that the almost universal consensus of opinion favors admission of evidence in such a case as this of the decedent's desertion, non-support, abandonment, and the like, because it is relevant, material as affecting the amount of the plaintiff's pecuniary loss.

The excluded testimony relative to the habits and morals of Dr. Riedel was relevant and material on the amount of money to be awarded the children for loss, among other things, of his nurture and moral training, which the jury was instructed it might consider in determining their damages.

Dr. Riedel was a patient of Dr. DeBolt's, undergoing psychoanalysis. His attitude and feelings toward his wife, his intention to terminate his support, his mental turmoil, the cause thereof, and symptoms of his trouble related to Dr. DeBolt for the purpose of treatment were admissible as an exception to the hearsay rule.

"—declarations of a patient to his doctor made for purposes of treatment, as to past pain, sensations, and symptoms are admissible—" McCormick and Ray, Texas Law of Evidence, Second Edition, Vol. I, Sec. 842, p. 625.

Testimony tending to show the state of Dr. Riedel's mind, his belief of his wife's infidelity, his mental turmoil in 1965, his intention to terminate his marriage and support and his entire attitude toward his wife and children was material and admissible and should not have been excluded. McCormick and Ray, Texas Law of Evidence, Second Edition, Vol. I, Chapter II, pp. 630, 631. Evidence tending to show his lack of respect for his wife and whether or not he probably would have continued to support and contribute to her throughout the remainder of his life, or to speedily terminate same, was admissible. VI Wigmore on Evidence, Sec. 1730, p. 93 (3rd Ed.); McCormick and Ray, Texas Law of Evidence, Second Edition, Vol. I, Sec. 798, pp. 593–594.

"The health and habits and like characteristics of the deceased, although in themselves not elements of damages for which a recovery may be had, are entitled to consideration when death is the basis of a suit for damages. The evidence offered with respect thereto, however, must be relevant to the issue of damages, to the amount contributed to the support of the plaintiffs, or to some other issue in the case, such as the probable duration of the life of the injured person, had he lived. Evidence as to these characteristics is also of importance in determining the damage sustained by children from the loss of nur-

ture, care, admonition, and moral and mental training of the parent—" 17 Tex.Jur.2d 685–6.

"Any competent evidence is admissible that tends to disclose the intention of the deceased to provide for the plaintiff if he had not succumbed to his injuries—" 17 Tex.Jur.2d 697.

■ Evidence of the disposition of the deceased to assist those bringing the suit, his habits of economy and sobriety and matters calculated to affect his earnings was admissible as tending to show the plaintiff's pecuniary loss. 17 Tex.Jur.2d, Sec. 107, p. 683. It has been held under similar circumstances that testimony is admissible of the habits and sobriety of the deceased. "The health, habits, sobriety, and the like, appear to be proper matters of inquiry * * *. [Houston & T. C.] Ry. Co. v. Cowser, 57 Tex. [293] 297, 304; [Texas Mexico] Ry. Co. v. Douglas, 73 Tex. 325, 11 S.W. 333 * * *." Ft. Worth & D. C. Ry. Co. v. Stalcup, Tex.Civ. App., 167 S.W. 279, 286 (WR). See also 25A C.J.S. Death § 102, p. 929. Declarations of deceased showing his feelings toward the plaintiffs and tending to show that he probably would or would not have continued throughout the remainder of his life to contribute to them is admissible. Galveston, H. & S. A. Ry. Co. v. Bonnet, Tex.Civ.App., 38 S.W. 813, 814 (WR); St. Louis, A. & T. Ry. Co. v. Johnston, 78 Tex. 542, 15 S.W. 104; Texas and P. Ry. Co. v. Riley, Tex.Civ.App., 183 S.W.2d 991, 995 (WR). Certainly, the jury was likely to find that the financial reward of a faithful, loving wife was much greater than that of the kind the rejected testimony indicated the deceased believed his wife to be. It has been held that facts such as separation may be considered in determining the amount of the wife's loss. 25A C. J.S. Death § 102, p. 929; Peterson v. United New York Sandy Hook Pilots Ass'n, D. C., 17 F.Supp. 676; Holland v. Closs, Tex. Civ.App., 146 S.W. 671, 673. It was held in Beaumont Traction Co. v. Dilworth, Tex.Civ.App., 94 S.W. 352, 357, that in this kind of a case it was reversible error to exclude evidence that deceased had abandoned the plaintiffs, because it was material and admissible on .he amount of damages. It has also been held that evidence that deceased was sober was admissible on the same issues. See also Peterson v. Pete-Erickson Co., 186 Minn. 583, 244 N.W. 68.

A 1966 authority on wrongful death actions, "Speiser, Recovery for Wrongful Death", states the applicable law as follows:

"Evidence concerning the character of the decedent and his habits is also relevant in wrongful death actions, as it is helpful in determining the amount of pecuniary benefits or assistance the beneficiaries might have received from decedent.

Evidence of the character and habits of the decedent is useful in showing the following traits: general ability and capacity for labor or business; industry; intelligence; manner of living (including frugality, lavishness, sobriety, intemperance, or other personal characteristics which will be of help or assistance in securing business or business enterprises or in earning money.) (pp. 163–5)

The disposition or likelihood of a person wrongfully killed to aid or support the beneficiaries in a wrongful death action is also relevant in determining damages. Not only may affection or the absence thereof on the part of the decedent for the beneficiaries be considered, but also aid received by the latter from the former during his lifetime, or the sparsity or absence of such aid. In addition, the decedent's state of health and general condition are important, relevant factors in determining the amount of financial assistance or other aid of a pecuniary value which the beneficiaries might have received from the decedent. (pp. 167–9)

Obviously, the relationship between the decedent and the beneficiary or beneficiaries is a significant element in determining and fixing wrongful death damages and in ascertaining loss of probable future support or contributions. This involves: the degree of family relationship, as to whether it is espousal, filial, parental or collateral; the close ties, affection and related factors, as between the decedent and the claimant or claimants; and the factor of possible future change with respect to furnishing of support, or the like." (p. 176).

In Austin Gaslight Co. v. Anderson, Tex.Civ.App., 262 S.W. 136 (Dis. C. J.), children sued for damages caused by the wrongful killing of their father. The court held the deceased father's answer in his divorce case should have been admitted, saying:

"Any declaration shown to have been made by appellees' father, or shown to have been authorized by him in his answer in this divorce proceeding, tending to throw light upon his attitude toward the future support, care, and maintenance of appellees, would be admissible in evidence for whatever it would be worth to the jury in determining the issue submitted to them as to the amount deceased would have probably contributed to their support, had he lived."

In Citizens' Telephone Company of Texas v. Thomas, 45 Tex.Civ.App. 20, 99 S.W. 879 (Writ ref.), a widow sued for the wrongful death of her husband. There was evidence that her relationship with her husband had not been harmonious. There was evidence of a separation which tended to be permanent. The court recognized that such evidence was admissible on the issue of the amount of damages suffered by the widow.

In Simpson v. Vineyard, Tex.Civ.App., 324 S.W.2d 276, 277, a mother sought damages for the wrongful death of her adult son. Evidence was admitted, over the ob-

jection that it was hearsay, that the son had said he supported his mother. The court affirmed the judgment, saying:

"It has * * * long been the law of Texas that declarations of persons, since deceased, made prior to the time the cause of action arose, are admissible to show his intention to support the mother or father, in an action to recover for his wrongful death. * * *

Any competent evidence is admissible which tends to disclose that the deceased provided for the plaintiff; the circumstances under which they were living; the attitude of the deceased toward his mother; the relative financial condition of the parties; the fact that the deceased was regularly and steadily employed, while plaintiff was not; and evidence of pecuniary need, in an action by a parent for the wrongful death of an adult child, may indicate a reasonable expectation of deriving benefit from the deceased if he had lived."

In Dixie Motor Coach Corporation v. Shivers, Tex.Civ.App., 131 S.W.2d 677, 680 (Dis. C. J.), a widow recovered damages for the wrongful killing of her husband. Exclusion of letters showing her affection for another man, whom she subsequently married, was held reversible error. The court said:

*"Whatever evidence tends to show the improbability of the continuance of the marriage relations, and the improbability of the continuance of rendition of services and contributions upon the part of the spouse, appears to us to be material and to bear directly upon the right of recovery and the probable amount * * *."* (Emphasis ours.)

In Gulf, C. & S. F. Ry. Co. v. Prazak, Tex.Civ.App., 181 S.W. 711, 712, it was held reversible error to exclude evidence of the bad reputation of the deceased. The court said:

"In cases of this kind the measure of damages is limited to the pecuniary bene-

fit which the plaintiffs would have derived from the services of the deceased child if he had not been killed; and, in determining what would have been the probable amount of such pecuniary benefit, it is proper for the proof to show, and for the jury to consider, the character and habits of the deceased child."

In Houston & T. C. R. Co. v. White, 23 Tex.Civ.App. 280, 56 S.W. 204, 206 (Writ ref.), a suit by parents for damages caused by the wrongful death of their son, a witness testified, over the objection that it was hearsay, that deceased told his mother shortly before his death that he wanted to support her for the rest of her life. The court said:

"This testimony was evidence of John's desire and intention to maintain and take care of his mother as long as he lived, and, in connection with other evidence, shows that she had a good reason to expect aid of pecuniary value from him. Such testimony is not hearsay, but original evidence, expressive of a son's affection for his mother, and of his intention to manifest it by contributing pecuniarily to her support and maintenance."

Lancaster v. Magrill, Tex.Civ.App., 244 S.W. 1078, 1080 (Writ ref.), was a suit by a widow and children for damages caused by the killing of their husband and father. Evidence was admitted, over the objection that it was hearsay, that the father intended to give one of his children a good education. The court said:

"The testimony was not subject to the objection that it was hearsay. There was no better method of determining what Magrill's intentions were regarding his son than the declarations made by him prior to his death."

See also Gulf, C. & S. F. R. Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659 and International & G. N. Ry. Co. v. Knight, 91 Tex. 660, 45 S.W. 556. In this connection we also call attention to the following authorities and decisions: 14 A.L.R.2d 522; McMillion v. Wilkinson, Tex.Civ.App., 135 S.W.2d 231; City of Port Arthur v. Wallace, Tex.Civ.App., 167 S.W.2d 549, 555 (Syl. 13), affirmed 141 Tex. 201, 171 S.W.2d 480; Casualty Ins. Co. v. Salinas, 160 Tex. 445, 333 S.W.2d 109; 90 A.L.R.2d 1056, p. 1064; 25A C.J.S. Death §§ 101 and 102, pp. 919 and 929; Wimberly v. City of Paterson, 75 N.J.Super. 584, 183 A.2d 691; Jensen v. Heritage Mutual Insurance Company, 23 Wis.2d 344, 127 N.W.2d 228; Sloan v. Sloan, Tex.Civ.App., 32 S.W.2d 513, 514; Pounds v. Minter, Tex.Com.App., 13 S.W.2d 351, 352; Holland v. Closs, Tex.Civ.App., 146 S.W. 671, 673; Galveston, H. & S. A. Ry. Co. v. Harris, Tex.Civ.App., 36 S.W. 776; Houston & T. C. Ry. Co. v. Cowser, 57 Tex. 293, 304 and Tex-Jersey Oil Corp. v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062. It has been held that specific instances of conduct may be independently relevant and admissible as showing the belief and intention of the deceased. 32 C.J.S. Evidence § 436, pp. 49, 50; Sun Ins. Office v. Foil, 187 S.C. 183, 197 S.E. 683, 686.

■■■ We are of the opinion that said statements by Mrs. Riedel to her treating doctor were admissible as an exception to the hearsay rule and as an admission of a party contradictory of her testimony on the trial that both Doctor and Mrs. Riedel wanted their marriage to work; that their marriage was happy and normal and that their troubles had died with the building of their last house in 1965. In McCormick and Ray, Texas Law of Evidence, (Second Edition), Vol. 2, Section 1121, p. 16 it is said that

"—it is well settled that any statement or conduct of a party which is inconsistent with the position taken by him at the trial may be given in evidence against him—"

See also Caplan v. Caplan, 83 N.H. 318, 142 A. 121.

It is true, as stated by appellees, that not all evidence relative to the marital problems of the Riedels and the morals of Dr. Riedel was excluded. But, after most carefully studying the entire record, we are forced to the conclusion that the evidence which was admitted relative to those matters probably did little, if anything, to alleviate the harm done by such exclusion and is insufficient to affect our conclusion that the exclusion was error which was reasonably calculated to cause and probably did cause an improper judgment. See Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210, 216. We cannot agree with appellees that Dr. Riedel's "more recent" statement that his wife had not been unfaithful was "conclusive of Dr. Riedel's state of mind" when he was killed. This could hardly be held conclusive of Dr. Riedel's state of mind and intention to not continue to live with and support his wife in the face of testimony that, only about an hour before he was shot, Dr. Riedel said he was going to divorce his wife and that, while he was dying, he directed that his wife not be called, because he didn't want to see her. The excluded testimony was so directly pertinent and material in determining Dr. Riedel's then state of mind, attitude and intention and, therefore, the amount of damages suffered by appellees, particularly his wife, that it was likely to have materially changed the judgment. Pacific Employers Insurance Co. v. Gibson, Tex.Civ.App., 419 S.W.2d 239, 243. It strongly tended to show, regardless of the fact that it may have been to some degree cumulative, that Mrs. Riedel's loss of the things for which she recovered damages was very little and that the Doctor, had he lived, would have soon divorced her. This is specially true of the excluded testimony by Mr. Allen that (a) Dr. Riedel told him that his wife was unfaithful; that she didn't love him; that he "couldn't make a go" of their marriage and that he came home early one day and found a naked doctor with his wife while she was wearing a red robe; (e) testimony of Dr. DeBolt that Dr. Riedel stated to him that he had found out that his wife had been unfaithful and his reaction to that discovery and (g) testimony by Dr. DeBolt of Dr. Riedel's statements to him in 1965 concerning his mental turmoil, divorce and that he was not able to go back to his wife.

Appellant's third point is that the jury failed to ascertain the "present value" of the benefits appellees would have received had Dr. Riedel lived. It is true that the record does not show the use of a discount rate to mathematically ascertain the present value, but there was evidence that the jury considered and discussed the interest the money to be awarded each appellee would earn. There was evidence that the jurors discussed and considered the rising cost of living and the diminishing value of the dollar, the future, and that the damages awarded were give and take figures and the result of compromise. The inquiry as to what amount of money "if paid now in cash" would fairly and reasonably compensate each plaintiff for the loss sustained as a result of Dr. Riedel's death was correct. Houston Belt & Terminal Ry. Co. v. Davis, Tex.Civ.App., 19 S.W. 2d 77 (Writ ref.). Although appellant did elicit a statement that the jury made no attempt to find the present value of the anticipated benefits the record does not compel that conclusion. The matters the jurors discussed in this connection were proper in determining the present value. Some of the evidence on this question involved the mental processes of the jurors and was inadmissible. We conclude that reversible error in this regard is not shown.

Appellant's fourth point is that the court erred in not limiting recovery of the children to their minority because of the absence of proof of anticipated benefits thereafter. In 17 Tex.Jur.2d 601, it is stated that, in the absence of evidence that the children had a reasonable expectation of receiving contributions from their deceased parent after they became twenty-one, the damages recoverable must be limited to the loss sustained during minority. But, in

Texas & N. O. R. Co. v. Sterling, Tex.Civ. App., 154 S.W.2d 966 (Ref. w. o. m.), it was held that the evidence was sufficient that the children had a reasonable expectation of receiving contributions after they became twenty-one and, therefore, it was not necessary for the court to limit their recovery to anticipated contributions during minority. There, the evidence merely showed that the father had been kind to his children, helped them, visited them regularly and gave them care and attention. The evidence here on that point is sufficient. We think such a limitation would have been improper. See Houston Transit Company v. Zimmerman, Tex.Civ.App., 200 S.W.2d 848 (Ref. n. r. e.). Point four is overruled.

■ Appellant's fifth point presents the contention in effect that the court erred in overruling his motion for a new trial because the jury was guilty of misconduct in that some jurors told the others in the jury room of their personal experiences with the cost of a college education. The record shows that the award to each child was arrived at by adding $12,000.00 to $15,000.00 as the cost of a college education, as to which there was no evidence except that of some juror in the jury room, and rounding off the result. There was no evidence introduced on the trial of the cost of a college education. The cost found was necessarily based on the related experience of a juror. The personal experience of one or more jurors, related in the jury room, was thus used to swell each child's recovery by $12,000.00 to $15,000.00. The rules provide that a new trial may be granted on the ground that the jury received other evidence than that which came from the witness stand. The reception of other evidence is ground for setting aside a verdict. 41 Tex.Jur.2d 107–108. Generally, a new trial should be granted when it is shown that during the jury's deliberations a juror stated to his fellows material facts based on his personal knowledge concerning the issues to be answered and that such statements probably influenced the jury in arriving at its verdict. 41 Tex.Jur.2d 122. In Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 486, 156 A.L.R. 1028, the Commission of Appeals in an opinion adopted by our Supreme Court said:

"It is well settled that cases must be tried in the court room and that a juror is not permitted to become a witness during the jury's deliberations and that it is misconduct for original evidence of material facts to be received by the jury during its deliberations. Hobrecht v. [San Antonio] & A. P. Ry. Co., Tex.Civ.App., 141 S.W. 579; Lincoln v. Stone, Tex.Com. App., 59 S.W.2d 100. Litigants' rights are not permitted to be thus jeopardized."

The cost of a college education was a material fact, relevant to the amount of each child's recovery and included therein. The only evidence thereof was that of jurors who were paying it. Here, jurors did state in the jury room their personal experiences relative to the cost of a college education. Such cost was shown to have gone into the recovery of each child. There was no dispute about the fact that one or more jurors related to his fellows his personal experience with paying the cost of sending a child to college. The juror Jeffs did not deny that this happened. She simply testified on the hearing of the motion for a new trial that the one juror that she knew had a child in college "did not use a figure" that she remembered. It was undisputed that $12,000.00 to $15,000.00 was added to the recovery of each of the four children as the cost of his college education. When all relevant evidence is analyzed that is the only conclusion that can reasonably be drawn therefrom.

■ To show reversible error appellant is not required to demonstrate that but for the errors shown a different judgment would have been rendered. Greenman v. City of Ft. Worth, Tex.Civ.App., 308 S.W. 2d 553, 556 (Ref. n. r. e.). Considering the probable cumulative effect of said errors we are forced to the conclusion that reversible error is established. Scott v. McLennan

County, Tex.Civ.App., 306 S.W.2d 943, 948 (Ref. n. r. e.); Southern Pacific Company v. Hubbard, 156 Tex. 525, 297 S.W.2d 120, 125; Scoggins v. Curtiss & Taylor, 148 Tex. 15, 219 S.W.2d 451, 452; Sproles Motor Freight Lines, Inc., v. Long, 140 Tex. 494, 168 S.W.2d 642, 645. In Texas Employers Insurance Association v. Price, Tex.Civ.App., 336 S.W.2d 304, we reversed a judgment because a juror related to his fellows his personal experience with hiring practices and stated that a man with the claimant's injury would have great difficulty in obtaining employment. We said:

"The above evidence is undisputed. It shows that a juror related his personal experiences to the jury concerning the practice of company employers in hiring and employing workmen, and that the purpose and effect of such statements was to show that appellee was totally incapacitated. It was misconduct for the juror to relate to the other jurors his own personal experience as original evidence of material facts to be considered in their deliberation."

Plaster v. Roper, Tex.Civ.App., 152 S.W. 2d 927 (Writ ref.), was a damage suit against a building contractor for furnishing defective workmanship and material. The foreman of the jury was in the construction business. The jury found that plaintiff's damages was the cost of a new foundation and wall. At the request of the jury, the foreman figured the cost of building the foundation and wall; the jury then added a profit of 20% for the contractor and thus obtained the figure returned by the jury as plaintiff's damages. This was held reversible error. In the present case, the jury arrived at the minors' damages, in part, solely from the information given them in the jury room concerning the personal experiences of one or more jurors with the cost of a college education, and then rounded off the figures. See also Maryland Casualty Co. v. Morua, Tex.Civ.App., 180 S.W. 2d 194 (Writ ref.); Hoyler v. City of Longview, Tex.Civ.App., 129 S.W.2d 416; Wald Transfer & Storage Co. v. Randolph, Tex.

Civ.App., 56 S.W.2d 197 (Writ dism.); Wallace v. Partin, Tex.Civ.App., 345 S.W. 2d 943; Southern Traction Co. v. Wilson, Tex.Com.App., 254 S.W. 1104; Moore v. Ivey, Tex.Com.App., 277 S.W. 106; Crawford v. Detering Co., 150 Tex. 140, 237 S.W. 2d 615; Atkins v. Graves, Tex.Civ.App., 367 S.W.2d 372 (Ref. n. r. e.); Parris v. Jackson, Tex.Civ.App., 338 S.W.2d 280.

■ Of course, we agree with appellees that the mental processes of jurors may not be probed and that they have a right to use their common knowledge and indulge in a free discussion of all the evidence introduced in the court room upon the trial. But, here there was no other evidence to discuss or use in determining the cost of a college education, which was included in each child's recovery. Contrary to appellees' contention, there was no dispute about the fact that misconduct occurred.

■ Appellant's sixth point is that the court erred in admitting a citation and plaque, posthumously awarded to Dr. Riedel, at the dedication of a swim meet, which recited Dr. Riedel's "tremendous devotion to all the youth of this community and the outstanding contributions—to his fellow man." The author was not shown. It was hearsay. It was erroneously admitted. To some extent, it was related to the recovery of the children for their loss of Dr. Riedel's education and moral training and it tended to refute evidence indicating his lack of morals. 24 Tex.Jur.2d 53–55; 24 Tex.Jur.2d ·66; Maryland Casualty Company v. Davis, Tex. Civ.App., 181 S.W.2d 107; Deramus v. Thornton, 160 Tex. 494, 333 S.W.2d 824–831; McCormick and Ray, Texas Law of Evidence, Second Edition, Vol. 1, Section 790, page 574.

■ We do not believe it was established that because Mr. Allen told Dr. Riedel to stay in the pickup and he didn't, that Dr. Riedel thereby became a trespasser; and, consequently, Mr. Allen owed him only the duty to not intentionally injure him. That point is overruled.

Appellant's seventh point asserts error in admitting Dr. Riedel's statement in the hospital immediately before his death, "My God, what will become of my wife and children?" We think it was admissible. We have considered appellant's remaining points and we think they do not show reversible error. They are overruled.

We conclude that reversible error was committed by exclusion of said evidence tending to show Dr. Riedel's state of mind, belief, attitude and intention relative to his wife and, in any event, that the cumulative effect of all the errors was reasonably calculated to cause and that it probably did cause rendition of an improper judgment.

The judgment is reversed and the cause is remanded.

## ON MOTION FOR REHEARING

The appellees contend that if the action of the trial court in excluding the proffered testimony referred to in appellant's points 1 and 2 and in admitting the testimony referred to in appellant's point 6 was error it was harmless error within contemplation of Rule 434, Texas Rules of Civil Procedure. This case should not be reversed on these points unless it can be held that the exclusion and admission of such evidence was calculated to and probably did cause the rendition of an improper judgment.

Chief Justice Calvert in his article on the Development of Harmless Error in Texas, in Volume 31, No. 1, at page 1 of the Texas Law Review said:

"If any definite conclusion may be drawn from a review of the opinions of the Supreme Court listed above it is that the court is trying to make the provisions of Rules 434 and 503 serve a useful purpose; the court seems to be developing, slowly but surely, a policy of refusing to set aside or reverse judgments for errors of law committed during the trial unless in the sound judgment of the court the errors contributed in a substantial way to bring about an unjust result."

"The modern concept of the problem seems generally to support the rule expressed in American Jurisprudence where it is said that 'in order to warrant a reversal, the error complained of must have been prejudicial to the substantial rights of the appellant.' "

Appellant's 1, 2 and 6 points are as follows:

"FIRST POINT:

The trial court erred in excluding evidence relating to the marital problems of the Riedels.

SECOND POINT:

The trial court erred in excluding evidence relating to the character and morals of Dr. Riedel."

"SIXTH POINT:

The trial court erred in admitting plaintiffs' Exhibit No. 21."

The appellant Allen testified that the deceased Riedel discussed with him on two occasions the possibility of divorcing his wife Patsy. The first time was in 1964 at the house the doctor was living in before he built the new house. Allen said the doctor told him "he was going to divorce Patsy." The appellant did not encourage the doctor to divorce his wife. The second time the deceased discussed with him the matter of divorcing his wife was on the day of the killing when Riedel said: "I am going to divorce Patsy."

This testimony from Mr. Allen and other facts and circumstances in evidence disclosed that the court admitted evidence relating to the Riedels' marital problems. The excluded testimony, about marital problems related to elements of the ultimate problem of dissolving the bonds of matrimony and were included in and cumulative of the more comprehensive problem of divorce which was properly admitted by the trial court.

The court has said in the original opinion:

"It is true, as stated by appellees, that not all evidence relative to the marital problems of the Riedels and the morals of Dr. Riedel was excluded."

I have considered all the evidence relating to the marital problems of the Riedels and the character and morals of Dr. Riedel which were admitted and have considered the evidence which was excluded. The excluded evidence was substantially the same and cumulative of the evidence that was admitted. Points one and two should be overruled.

I would hold that appellant has failed to discharge his burden of showing that the admission in evidence of plaintiffs' exhibit 21 caused the rendition of an improper judgment.

Appellant's 5th point is as follows:

"The misconduct of the jury in using personal knowledge of jurors in determining answers to damage issues."

Four of the jurors testified on appellant's motion for a new trial. At the conclusion of such testimony, it was stipulated that all the jurors had been subpoenaed and were present and that the other eight jurors' testimony would be generally and substantially the same as the jurors who testified.

The effect of the testimony of some of the jurors was that they related their personal experiences with regard to costs of a college education during their deliberations.

The juror, Mrs. Jeffs, testified and was asked: "Tell us whether or not any of the jurors related their personal experiences in connection with that cost?" and she answered: "I don't remember any juror relating any personal experience. Thurman Jay is the only one that I know of that had a child in college at this time, and he did not use a figure at all that I remember."

The original opinion states "contrary to appellees' contention there was no dispute about the fact that misconduct occurred." In my opinion, Mrs. Jeffs' testimony makes an issue on misconduct.

The trial court has found that misconduct did not occur on conflicting evidence. Under such circumstances the finding is binding on this court.

I would set aside our original opinion, grant appellees' motion for rehearing and affirm the judgment of the trial court.